F I L E D
Clerk
District Court

F. MATTHEW SMITH
Law Office of F. Matthew Smith, LLC
2nd Floor, UIU Building
P.O. Box 501127
San Jose, Saipan, MP 96950
Telephone No.: (670) 234-7455/234-7427
Facsimile No.: (670) 234-7256

DEC -- 1 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

Attorney for Plaintiff.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE NORTHERN MARIANA ISLANDS

**0040**

| | |
|---|---|
| SAIPAN HANDICRAFT,    ] | Civil Action No. 05-_____ |
| **Plaintiff,**    ] | |
| v.    ] | **VERIFIED COMPLAINT** |
| MICRONESIA WOODCRAFT ENT., INC.,    ]<br>**TIRZO J. ADRIATICO, individually and as**    ]<br>**President of Micronesia Woodcraft Ent., Inc.,**    ]<br>**and JOHN DOES 1-40,**    ] | |
| **Defendants.**    ] | |

Plaintiff Saipan Handicraft ("Handicraft") hereby brings this action against Defendant

Micronesia Woodcraft Ent., Inc., Defendant Tirzo J. Adriatico, individually and as President of

Micronesia Woodcraft Ent., Inc., and the other defendants for the wrongful use in commerce of false

designations of origin, false descriptions, and false representations, all in violation of the Federal

Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.* ("the Act"), and more specifically 15 U.S.C. §

1125(a) of the Act; for infringement of trademark and trade dress rights; for unfair competition;

tortious interference with contracts; interference with business relationships with customers;

interference with competitor's contract for supply of raw materials; and for violation of the CNMI

# ORIGINAL

Consumer Protection Act, 4 CMC §§ 5101, *et seq.*

In support of its complaint, Handicraft alleges:

**Jurisdiction**

1.      Original jurisdiction arises under 28 U.S.C. § 1338(a), 28 U.S.C. § 1338(b), and under 15 U.S.C. § 1121 as this case concern the trademark laws of the United States and unfair competition claims related thereto.

2.      Supplemental jurisdiction arises under 28 U.S.C. § 1367(a) over all other claims made in this action as they are related to the original jurisdiction claims and form part of the same case and controversy.

3.      Venue is properly placed in this Court under 28 U.S.C. § 1391(b) as all defendants reside or do business in the CNMI and all actions giving rise to this complaint occurred in the CNMI.

**Parties**

4.      Plaintiff Saipan Handicraft ("Handicraft) is a sole proprietorship, licensed to do business in the CNMI, having its principal place of business at Chalan Kiya, Saipan, Commonwealth of the Northern Mariana Islands.

5.      Upon information and belief, Defendant Micronesia Woodcraft Ent., Inc. ("Woodcraft") is a CNMI corporation, licensed to do business in the CNMI, having its principal place of business at San Vicente, DanDan, Saipan, and possibly also having operations in Rota, Commonwealth of the Northern Mariana Islands.

6.      Upon information and belief, defendant Tirzo J. Adriatico ("Tirzo") is a resident of Saipan, CNMI, a citizen of the Republic of the Philippines, and the President, director and the

majority shareholder of Woodcraft.

7.      Defendants John Does 1-20, inclusive, are the fictitious names of defendant individuals, companies, organizations or corporations, whose true names are unknown to Handicraft at this time, that manufacture, distribute, sell or in some other manner manufacture and/or promote handcrafted traditional-style dolls that infringe upon Handicraft's trademarks or trade dress rights. When such true names are discovered, this complaint shall be amended by inserting such true names in place and stead of said fictitious names.

8.      Defendants John Does 21-40, inclusive, are the fictitious names of defendant individuals, companies, organizations or corporations, whose true names are unknown to Handicraft at this time, that retail, distribute, sell or in some other manner retail and/or promote handcrafted traditional-style dolls that infringe upon Handicraft's trademarks or trade dress rights.  When such true names are discovered, this complaint shall be amended by inserting such true names in place and stead of said fictitious names.

**Statement of Facts**

9.      Handicraft was organized by Rodrigo Capati ("Capati") and began doing business in the year 1984 under the name Saipan Woodcraft Ent. Before that time, from 1980 to 1983, Rodrigo Capati was also making and selling wishing dolls but not under the Handicraft name or license.

10.     Since 1984, Handicraft has created and sold a variety of wood and handicraft products, including handcrafted traditional-style dolls made out of bayogo.  Bayogo (also known as seabeans) is the name of the seed from a local plant/vine.

11.     In December of 2003, Handicraft changed its name **from** Saipan Woodcraft Ent. **to**

<u>Saipan Handicraft</u> after Tirzo, a former employee, opened a competing business named Micronesia Woodcraft Ent. (confusing similar to Saipan Woodcraft Ent.) and copied all of Handicraft's wood carving designs. The confusion caused by Tirzo's intentionally confusing name and unfair business actions, and a decision by Handicraft to focus exclusively on the production of its Bo Jo Bo Wishing Dolls, were the primary reasons for change of name by Handicraft.

12.    From the very beginning, Handicraft (and Capati from 1980-83) has identified and continues to identify its handcrafted traditional-style doll products with and by the name and trademark "Bo Jo Bo Wishing Dolls" alone or with other words or symbols including the "Legend of the Bo Jo Bo Wishing Dolls."

13.    Handicraft has widely sold in interstate commerce, including Guam and Japan, its wishing dolls identified by the above described trademarks, and Handicraft's dolls become widely known to the public as dolls of high quality, beauty and luck.

14.    Handicraft has developed a substantial clientele and a profitable business, and has acquired through its efforts a reputation as a competent, dependable and honest company.

**History of the Bo Jo Bo Wishing Dolls**

16.    The origination and early history of the bayogo dolls has recently been the subject of debate in the media, the following recitation of the history is provided to give this Court and others a sense of the time as well as the background from which this case arises. The history also reveals why neither Handicraft nor any others can successfully apply for a patent.

17.    Upon information and belief, the first dolls using the "Bo Jo Bo Wishing Dolls" name and design were made in the early 1960s. These dolls were larger than the current version, stood

about a foot tall, and were made from the larger bayogo.

18.    Upon information and belief, the name, legend and idea for these dolls was the brainchild of Dr. William Vitarelli, who was employed by the Education Department of the Trust Territory of the Pacific Islands and was on Saipan helping to create a local handicraft item that the Marianas District could sell and display at an upcoming arts festival.

19.    Upon information and belief, Dr. Vitarelli worked together with Enrique Kisa, and also with Gus Camacho and Manuel Kisa, to develop a design for the dolls that could be made from the larger bayogo.  Each doll had a three-segment/seed body, but no hair or skirt.

20.    Upon information and belief, Dr. Vitarelli created the name "Bo Jo Bo Wishing Dolls" as well as the associated legend to accompany the dolls.  Upon information and belief, the legend was based in San Roque, Saipan because that is the village in which the Kisa family and the Camacho family resided.

21.    Upon information and belief, Dr. Vitarelli eventually moved from the Marianas District and left the name, legend and idea with Enrique Kisa, Gus Camacho and Manuel Kisa.

22.    Upon information and belief, for a period of time after Dr. Vitarelli left, Enrique Kisa manufactured and sold the doll before turning the business over to his son, Manuel Kisa, who produced the dolls until approximately 1976.

23.    Upon information and belief, when Manuel Kisa stopped producing the dolls and stopped using the "Bo Jo Bo Wishing Dolls" name and legend, Gus Camacho began producing and selling them using the "Bo Jo Bo Wishing Dolls" name and legend.

24.    During this time of production by Gus Camacho, Capati (the founder and owner of

Handicraft) was an employee of Gus Camacho and was responsible for assembling and making the dolls. It was during this time that the size of the wishing dolls was reduced and the smaller bayogo were used to form the bodies of the dolls.

25.    Upon information and belief, in or around 1979, Gus Camacho stopped producing the dolls and stopped using the "Bo Jo Bo Wishing Dolls" name and legend in order that he might pursue other more lucrative lines of business, specifically building construction.

24.    With the ceasing of production by Gus Camacho, all of the original users and the creator of the trademarks "Bo Jo Bo Wishing Dolls" and "Legend of the Bo Jo Bo Wishing Dolls" abandoned any common-law interest they might have had in such trademarks.

26.    In or around 1980, after leaving the employment of Gus Camacho, Capati began making the dolls and using the "Bo Jo Bo Wishing Dolls" name and legend. At first, from 1980-1983, Capati made the dolls under a business license held by a friend; but in 1984, after a short period away from the CNMI, Capati returned to the CNMI and began making the dolls and using the "Bo Jo Bo Wishing Dolls" name and logo under the Handicraft business license.

27.    From 1984 forward, Handicraft produced, marketed and sold the dolls and used the "Bo Jo Bo Wishing Dolls" name and legend. This use was exclusive and uninterrupted. Further, Handicraft made unique modifications to the dolls that increased their value and marketability including, but not limited to, modifying the skirt length and shape, added a pistachio nut hat, and changing and strengthening the look and colors of the face, string, and hanging loop.

28.    Two years after the original creators stopped using and abandoned the "Bo Jo Bo Wishing Dolls" name and legend, Capati and Handicraft by its use and sales earned and developed

their own trademark and trade dress rights in the "Bo Jo Bo Wishing Dolls" name and legend.

29.     Beginning in 1984, Handicraft, through Capati, entered into an oral agreement with the DFS shops at the various hotels and in the airport and agreed to sell and provide wishing dolls to DFS stores each month. This contract and arrangement continued with DFS from 1984 through June of 2005.

30.     Beginning at various times and continuing for various durations, Handicraft entered into similar oral agreements with numerous other retail shops on Saipan, Rota, and Guam.

31.     Since 1984, Handicraft has spent substantial sums advertising and promoting its "Bo Jo Bo Wishing Dolls" name and legend in interstate commerce, and on the internet, with the purpose of associating and identifying its specific look and product with these brand and trade names.

32.     On October 13, 2005, Handicraft formally applied for a registered trademark, "Bo Jo Bo Wishing Doll" with the United States Patent and Trademark Office, which application was assigned serial number 78732231.

33.     On October 13, 2005, Handicraft also formally applied for a registered trademark, "Legend of the Bo Jo Bo Wishing Doll" with the United States Patent and Trademark Office, which application was assigned serial number 78732233.

34.     On December 1, 2005, Handicraft applied for a registered trade dress for its Bo Jo Bo Wishing Dolls with the United States Patent and Trademark Office, which application was assigned serial number 78764105.

35.     Handicraft asserts its common law trademark and trade dress rights in addition to its current rights under the Act pending the registration of its trademarks and trade dress.

36.     Beginning at a date many years prior to defendants' activities complained of herein, Handicraft's trademarks became famous and acquired a secondary meaning with the public as indicating a single source of quality hand-crafted traditional dolls with a unique look and as indicating Handicraft as such source.

37.     Prior to the acts of defendants hereinafter complained of, Handicraft had acquired an impressive and valuable reputation with the public due to the excellent quality of the dolls manufactured and sold by it, and as a result thereof Handicraft's net annual earnings therefrom were increasing annually.

38.     In May 2005, and again in September 2005, there were produced promotional videos that specifically highlighted Handicraft's "Bo Jo Bo Wishing Dolls", the name and the legend.  In the videos, people are seen making successful wishes using Bo Jo Bo Wishing Dolls; and Handicraft's name and business location is prominently featured along with comments from its managers and owners as they make the wishing dolls. These videos were shown in Japan on numerous occasions and as a result sales and demand for the Bo Jo Bo Wishing Dolls rose sharply.

39.     By virtue of their untiring and diligent efforts, Handicraft has made the "Bo Jo Bo Wishing Dolls" name, legend, mark as well as the distinctive look and trade dress famous, which protected trade dress is not a functional part of the dolls.

40.     Without the knowledge or consent of Handicraft, and beginning long after Handicraft had established extensive and valuable goodwill in connection with its dolls identified by its trademarks and unique trade dress, Woodcraft, Tirzo and the other defendants, with full knowledge of the existence and reputation of Handicraft's products, and with the specific intent to deprive

Handicraft of the great profits Handicraft was enjoying through the sale of its dolls, began making, marketing and selling, and they continue to make, market and sell, dolls that copy and use, without permission, the trademarks and trade dress of Handicraft in connection with the sale, offering for sale, distribution, advertising, and promotion of non-Handicraft dolls.

41.    In fact, the dolls offered by Woodcraft and Tirzo to the public use a card/label so closely resembling the label used by Handicraft as to be nearly identical.  For comparison purposes: a true and accurate copy of Handicraft's original card/label is attached hereto as **Exhibit A**;  and a true and accurate copy of Woodcraft's imitation card/label is attached hereto as **Exhibit B**.

42.    For many years prior to defendants' activities complained of herein, Tirzo and the other defendants  have known of the use of Handicraft's trademarks to identify Handicraft's marketing of its hand-crafted traditional wishing dolls.  Tirzo and Woodcraft had actual notice of Handicraft's use of the trademarks, as Tirzo was employed by Handicraft in the years 1992 and 1993, during which time, Handicraft was actively manufacturing, marketing its dolls and using its trademarks and trade dress.

43.    In selecting and using the symbol "Bojo Bo Wishing Dolls" and "Legend of the Bojo Bo Wishing Dolls" in connection with the sale, offering for sale, distribution, advertising, and promotion of Woodcraft dolls, Tirzo and Woodcraft have acted and are acting with the purpose of taking the benefit of the favorable reputation and valuable goodwill which Handicraft has established in its trademarks, and causing the dolls of Woodcraft to be palmed off as made, authorized, sponsored, or endorsed by or otherwise connected with Handicraft.

44.    In selecting and using the similar or confusing names, legends or trade dress in

connection with the sale, offering for sale, distribution, advertising, and promotion of their dolls, Tirzo, Woodcraft and the other defendants have acted and are acting with the purpose of taking the benefit of the favorable reputation and valuable goodwill which Handicraft has established in its trademarks, and causing the dolls of others to be palmed off as made, authorized, sponsored, or endorsed by or otherwise connected with Handicraft.

45.    Additionally, Woodcraft and Tirzo modified their dolls, over time, to more and more closely resemble the Handicraft dolls. In 1994, Tirzo and Woodcraft began producing handcrafted traditional-style dolls, such dolls did not have hair, a mouth or a hat and no infringing label was attached, and the skirts were distinctly stiff and flat.

46.    However, following the promotional campaign in Japan, Woodcraft, Tirzo and the other defendants modified their dolls to more closely resemble those of Handicraft by, for example, incorporating hair, shaping the skirts, adding a mouth and a pistachio nut hat, and by attaching a label with "Bojo Bo Wishing Dolls" and "Legend of the Bojo Bo Wishing Dolls" imprinted in a similar font and format to resemble the Handicraft label.

47.    Woodcraft and Tirzo changed the look of their dolls so much as to make them virtually indistinguishable from the dolls of Handicraft. True and accurate photographs of an earlier version of the Woodcraft dolls are attached hereto as **Exhibit C**. True and accurate photographs of Woodcraft's currently modified dolls are attached hereto as **Exhibit D**. And true and accurate photographs of Handicraft's original dolls are attached hereto as **Exhibit E**.

48.    Handicraft is informed and believes, and thereon alleges, that the general public is misled into buying Woodcraft dolls and the dolls of other defendants under the impression that they

are buying Handicraft dolls and that such confusion results solely from Woodcraft's, Tirzo's and the other defendants' fraudulent and deceitful attempts to imitate Handicraft dolls and to palm off their dolls to the public as that of Handicraft or as being associated with those of Handicraft.

49.     Handicraft has protested the infringements and activities of Woodcraft, Tirzo and the other defendants through repeated verbal communications and more recently by sending them cease and desist letters.

50.     Despite these demands and protest and notice from Handicraft, Woodcraft, Tirzo and the other defendants continue to infringe the trademark and trade dress rights of Handicraft and have taken no action to correct or stop their violations.

51.     Woodcraft, Tirzo and the other defendants intend to continue and expand their uses of Handicraft's trademarks "Bojo Bo Wishing Dolls" and "Legend of the Bojo Bo Wishing Dolls" and associated trade dress within the Commonwealth of the Northern Marianas, Guam, Japan and elsewhere.

52.     The names, legends, look, trade dress and symbols "Bojo Bo Wishing Dolls" and "Legend of the Bojo Bo Wishing Dolls" used by Woodcraft, Tirzo and/or the other defendants are colorable imitations of and confusingly similar to Handicraft's above-described trademarks.

53.     Woodcraft's, Tirzo's and the other defendants' activities complained of herein are causing confusion and are likely to cause confusion, to cause mistake and to deceive purchasers and others as to the source, nature and quality of the dolls marketed by them.

54.     Handicraft has been seriously damaged by the actions of Tirzo, Woodcraft and the other defendants, and unless Woodcraft, Tirzo and the other defendants are preliminarily and

permanently enjoined, Handicraft and its goodwill and reputation will continue to suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated or compensated in money damages.

**COUNT ONE**
**Violation of 15 U.S.C. § 1125(a)**
**Use of False Designation in Interstate Commerce**

55.     Handicraft hereby re-alleges paragraphs 1-54 in support of its claim under 15 U.S.C. § 1125(a)

56.     Woodcraft, Tirzo and the other defendants have caused goods to enter into interstate commerce with the designation and representation "Bojo Bo Wishing Dolls" and "Legend of the Bojo Bo Wishing Dolls" connected therewith and used a trade dress unlawfully similar to those marks and dress owned by Handicraft.

57.     These defendants' use of the Handicraft's trademarks are a false description and represent that such goods are made by, sponsored by or affiliated with Handicraft.

58.     These defendants' acts are in violation of 15 U.S.C. § 1125(a), in that these defendants have used, in connection with goods, a false designation of origin and a false description or representation, including words and other symbols tending falsely to describe or represent the same, and has caused such goods to enter into interstate commerce.

59.     Handicraft has been damaged by such false description and representation because, among other things, purchasers have been confused as to the true source, sponsorship or affiliation

of defendants' goods.

60.    By reason of defendants' acts alleged herein, Handicraft has suffered, and will continue to suffer, damage to its business, reputation, and good will and has lost sales and profits that Handicraft would have made but for the defendants' acts.

## COUNT TWO
### Trademark Infringement

61.    Handicraft hereby re-alleges paragraphs 1-60 in support of its claim of trademark infringement.

62.    Defendants' aforesaid acts constitute trademark infringement in violation of Handicraft's trademark rights at common law and/or under the Act.

63.    Handicraft has been damaged by such violations and infringement because, among other things, purchasers have been confused as to the true source, sponsorship or affiliation of defendants' goods.

64.    By reason of defendants' acts alleged herein, Handicraft has suffered, and will continue to suffer, damage to its business, reputation and good will and has lost sales and profits that Handicraft would have made but for the defendants' acts.

## COUNT THREE
### Trade Dress Infringement

65.    Handicraft hereby re-alleges paragraphs 1-64 in support of its claim for trade dress

infringement.

66.    Defendants' aforesaid acts constitute trade dress infringement in violation of Handicraft's trade dress rights at common law and/or under the Act.

67.    Handicraft has been damaged by such violations and infringement because, among other things, purchasers have been confused as to the true source, sponsorship or affiliation of defendants' goods.

68.    By reason of defendants' acts alleged herein, Handicraft has suffered, and will continue to suffer, damage to its business, reputation and good will and has lost sales and profits that Handicraft would have made but for the defendants' acts.


## COUNT FOUR
### Unfair Competition

69.    Handicraft hereby re-alleges paragraphs 1-68 in support of its claim of unfair competition.

70.    Defendant's aforesaid acts constitute unfair competition with Handicraft in violation of plaintiff's rights at common law and/or under the Act.

71.    Handicraft has been damaged by such unfair competition because, among other things, purchasers have been confused as to the true source, sponsorship or affiliation of defendants' goods.

72.    By reason of defendants' acts alleged herein, Handicraft has suffered, and will continue to suffer, damage to its business, reputation and good will and has lost sales and profits that

Handicraft would have made but for the defendants' acts.

## COUNT FIVE
### Tortuous Interference with Contracts

73.    Handicraft hereby re-alleges paragraphs 1-72 in support of its claim of Tortuous inference with contracts.

74.    Woodcraft, Tirzo and other defendants, through their officers and agents, with full knowledge of the oral  contract, and intending to harass, annoy, persecute, injure, destroy and otherwise interfere with the due prosecution of the Handicraft's business, wrongfully, intentionally and maliciously persuaded DFS to repudiate and cancel contract and induced DFS to enter into a contract with defendants, some or all of them, whereby defendants, some or all of them, undertook to provide DFS their own handcrafted dolls.

75.    Woodcraft, Tirzo and other defendants, through their officers and agents, persuaded DFS to repudiate and cancel the contract with Handicraft by false, malicious and fraudulent representations that Handicraft was unreliable or unable to furnish the goods and services contracted for, or by agreeing to protect and indemnify DFS against any and all liability incurred by reason of breach of the contract previously entered into with Handicraft.

76.    DFS would not have breached the contract and agreement it made with Handicraft, but for the wrongful conduct of Woodcraft, Tirzo, and or the other defendants.

77.    As a consequence of these defendants' conduct described above, Handicraft has been damaged.

## COUNT SIX

### Interference with Business Relationships with Customers

78.     Handicraft hereby re-alleges paragraphs 1-77 in support of its claim of interference with business relationships.

79.     Woodcraft, Tirzo and other defendants, through their officers and agents, and in furtherance of a purpose to harass, annoy, persecute, injure, destroy and otherwise interfere with the prosecution of Handicraft's business, did and still does, induce, persuade, and entice Handicraft's customers to have no business relations or transactions with Handicraft.

80.     In carrying out the acts alleged, Woodcraft, Tirzo and the other defendants, through their officers and agents, made false, fraudulent and malicious representations to Handicraft's customers and prospective customers that Handicraft was unreliable or unable to furnish the goods contracted for, or these defendants offered to enter into agreements with Handicraft's customers to protect and indemnify the customers against any and all liability they might incur if they would breach and terminate their contracts with Handicraft.

81.     These acts of Woodcraft, Tirzo and/or the other defendants, through their officers and agents, were and are prompted by malice and all such acts were done maliciously, fraudulently, and without legal justification or excuse and as a consequence, Handicraft has been damaged.

## COUNT SEVEN

### Interference with Competitor's Contract for Supply of Raw Materials

82.    Handicraft hereby re-alleges paragraphs 1-81 in support of its claim of interference with competitor contracts.

83.    Manufacture of Handicraft's dolls requires a considerable supply of bayogo. These seeds can be found on Saipan and on Rota among other places. Handicraft has suppliers in both locations, as well as other locations.

84.    Woodcraft, Tirzo and/or other defendants, through their officers and agents, visited Handicraft's supplier on Rota and knowingly and maliciously made false statements that Handicraft had been "blacklisted" from purchasing bayogo on Rota, causing the supplier to doubt whether it should continue to sell bayogo to Handicraft.

85.    The above-mentioned statements by defendants were and are totally false and were made by defendants with malice and knowledge of their falsity for the sole purpose of causing the supplier in Rota to cease doing business with Handicraft, thereby damaging or eliminating Handicraft as a competitor of defendants in the handcrafted doll market.

86.    As a result of the conduct of defendants, the Rota supplier ceased doing business with Handicraft and Handicraft was forced to secure another supplier. This was finally accomplished by the expenditure of great time and effort by Handicraft.

87.    Defendants threatens to continue to do the acts complained of herein, and unless enjoined, will continue to do so, all to Handicraft's irreparable damage. It would be difficult to ascertain the amount of compensation which would afford Handicraft adequate relief for such

continuing acts, and a multiplicity of judicial proceedings would be required. Therefore, Handicraft's remedy at law is not adequate to compensate it for its injuries.

## COUNT EIGHT
### Violation of the Consumer Protection Act
### 4 CMC §§ 5101, *et seq.*

88.    Handicraft hereby re-alleges paragraphs 1-87 in support of its claims under the CNMI Consumer Protection Act.

89.    Defendants' acts, as alleged herein, constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as provided by the laws of the Commonwealth of the Northern Mariana Islands, in that defendants have been passing its goods off as those of Handicraft; defendants have caused confusion as to the source, sponsorship, approval or certification of goods; defendants have caused confusion as to the affiliation, connection or association with or certification, by another; defendants have disparaged the goods and business of another by false or misleading representations of fact; and defendants have engaged in acts and practices that are unfair or deceptive to the consumer. All of which are in violation of the CNMI's Consumer Protection Act.

90.    Handicraft has been damaged by such violations of the Consumer Protection Act and has suffered, and will continue to suffer, damage to its business, reputation and good will and has lost sales and profits that Handicraft would have made but for the defendants' acts. Further, Handicraft has incurred legal fees and other costs as a result of these violations.

**Prayer for Relief**

WHEREFORE, Handicraft prays for relief as follows:

1.     That this Court grant an injunction pursuant to the powers granted it under 15 U.S.C. § 1116, enjoining defendants and their agents, servants, and employees from directly or indirectly using the name "Bo Jo Bo Wishing Dolls' and "Legend of the Bo Jo Bo Wishing Dolls" or any mark, word, or name similar to Handicraft's mark which is likely to cause confusion or mistake or deceive consumers.

2.     That this Court, pursuant to the power granted it under 15 U.S.C. § 1118, order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendants bearing the mark "Bo Jo Bo Wishing Dolls" or "Legend of the Bo Jo Bo Wishing Doll" or any other symbol confusingly similar shall be delivered up and destroyed.

3.     That the injunction further:

(a)     Prevent defendants, and each of them, individually and acting through business firms or associations, their agents, servants and employees, from using any advertising or promotional materials containing Handicraft's trademarks "Bo Jo Bo Wishing Dolls" or "Legend of the Bo Jo Bo Wishing Dolls", or any other similar or confusing mark or name, in the sale or promotion of their dolls;

(b)     Prevent defendants from copying Handicraft's trade dress associated with its trademarks, name and legend;

( c )     Order defendants to remove from any store dolls or products that violate the rights of Handicraft;

(d)    Prevent defendants from manufacturing dolls or products in violation of Handicraft's rights;

(e)    Prevent defendants, and each of them, individually and acting through business firms or associations, their agents, servants and employees, from doing any act or thing calculated to or likely to induce the belief that defendants' businesses or merchandise is in any way connected with Handicraft or its products.

4.    For an accounting by defendants and judgment for the amount found to be due on such accounting in favor of Handicraft, for all profits realized by defendants, and for all damages and loss of profits ascertained to have been sustained by Handicraft by reason of the unlawful conduct of the defendants.

5.    For damages against defendants in the sum to be proven at trial.

6.    For any liquidated damages available against defendants.

7.    For Handicraft's reasonable costs and expenses, including attorney fees, incurred in connection with the prosecution of this action.

8.    For exemplary damages against defendants in a sum to be determined at trial by reason of the willful and deliberate nature of defendants' actions, involving malicious injury or a reckless indifference to the interests of Handicraft.

9.    With respect to defendants, pursuant to 15 US.C. § 1117, for treble the amount of actual damages suffered by Handicraft or that the court award Handicraft punitive and exemplary damages in a sum to be determined at trial by reason of defendants' fraud and palming off.

10.    For such other and further relief as this Court may deem just and equitable.

Respectfully submitted this ___12-1-05___ .

F. MATTHEW SMITH

Attorney for Plaintiff Saipan Handicraft

## **VERIFICATION**

We, the undersigned, as owners and managers of Saipan Handicraft, a CNMI sole proprietorship and the Plaintiff in the above-captioned matter, under penalty of perjury, state for himself, herself and ourselves that: (1) we have read the foregoing Verified Complaint and understand the contents thereof; (2) we hereby verify that the contents are true and correct; and (3) we have affixed our signature below on this _1st_ day of December, 2005, on Saipan, CNMI.

RODRIGO M. CAPATI

ADELA S. CAPATI

RODEL S. CAPATI

*Verified Complaint -- Page 21 of 21*