F I L E D
Clerk
District Court

F. MATTHEW SMITH
Law Office of F. Matthew Smith, LLC
2nd Floor, UIU Building
P.O. Box 501127
San Jose, Saipan, MP 96950
Telephone No.: (670) 234-7455/234-7427
Facsimile No.: (670) 234-7256

DEC 2 8 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

Attorney for Saipan Handicraft.

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| SAIPAN HANDICRAFT,<br><br>            Plaintiff,<br>vs.<br><br>MICRONESIAN WOODCRAFT ENT., INC.; TIRZO J. ADRIATICO, individually and as President of Micronesian Woodcraft Ent., Inc.; and JOHN DOES 1-40,<br><br>            Defendants. | Civil Action No. 05-0040<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** and **FOR EXPEDITED HEARING**<br><br>Date: JAN - 6 2006<br>Time: 10:00 a.m.<br>Judge: Honorable Alex R. Munson |

Plaintiff Saipan Handicraft ("Handicraft") seeks a preliminary injunction to stop defendant Micronesian Woodcraft Ent., Inc. and its President and majority share holder, defendant Tirzo J. Adriatico (collectively "Woodcraft"), from continued infringement upon its trademark and trade-dress rights at common law and under the Federal Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, during the pendency of this suit.

    In the Ninth Circuit, a court may issue a preliminary injunction if it finds that:

    (1) the moving party will suffer irreparable injury if injunctive relief is not granted, (2) the moving party will probably prevail on the merits, (3) in balancing the equities, the non-moving party will not be harmed more than the moving party is helped by the injunction, and (4) granting the injunction is in the public interest.

*Stanley v. University of Southern California,* 13 F.3d 1313, 1319 (9th Cir. 1994).

    Courts have awarded preliminary injunctions, not only to maintain the existing state of matters, but also to compel a defendant to correct injury already inflicted by defining the status quo



as "the last, uncontested status" that existed between the parties before the dispute developed. *Washington Capitols Basketball Club, Inc. v. Barry,* 419 F.2d 472, 476 (9th Cir. 1969).

Handicraft seeks a preliminary injunction requiring Woodcraft to cease using Handicraft's trademark and trade-dress. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), has been interpreted to allow the first manufacturer of a product an unregistered trademark in the "trade dress" of its product. *M. Kramer Mfg. Co., Inc. v. Andrews,* 783 F.2d 421, 448 (4th Cir. 1986) ("The underlying purpose of section 43(a) is to protect both consumers and competitors from a wide variety of misrepresentations of products and services, implicating a broad spectrum of marks, symbols, design elements and characters." at n.25).

Trade-dress refers to the total image of a product and may include such features as size, shape, color, texture, and graphics. *Stormy Clime, Ltd. v. ProGroup, Inc.,* 809 F.2d 971, 974 (2d Cir. 1987). Over the years, courts have accorded trade-dress essentially the same protection as registered marks. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 775, 112 S. Ct. 2753, 2761, 120 L. Ed. 2d 615, 628 (1992)(Stevens, J. concurring). This is because a product's design can serve to distinguish it from other products in much the same way a trademark can. *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co., Inc.,* 916 F.2d 76, 78-79 (2d Cir. 1990).

In the past, Woodcraft produced, manufactured and sold a traditional-style handcrafted doll made of bayogo that was not labeled with the "Bo Jo Bo Wishing Doll" or "Legend of the Bo Jo Bo Wishing Doll" trademarks. This earlier design did not infringe on Handicraft's trade-dress rights, as Woodcraft's earlier doll, among other differences, did not have hair, a mouth or the pistachio nut hat, its skirts were distinctly stiff and flat and it was sold without a label attached. <u>Verified Complaint</u> at ¶ 45-46; *see also* <u>Verified Complaint</u> Exhibit C (photograph of Woodcraft's earlier design). During the time that Woodcraft sold this design of dolls, there was no dispute between the

parties. Therefore, Handicraft respectfully asks the Court to define the status quo to this time. Verified Complaint at ¶¶ 38, 45-47.

## THE FOUR-PARTS OF THE *STANLEY* TEST FOR GRANTING INJUNCTIVE RELIEF

### 1. Irreparable Injury to Handicraft

Woodcraft has negatively impacted the sales of Handicraft's dolls. In addition to decreasing the total sales dollar volume, it has also taken customers, clients, advertising and goodwill that rightfully belonged to Handicraft and that but for the actions of Woodcraft, would have inured to Handicraft's benefit. *See* Verified Complaint. In addition, because of the confusion that Woodcraft has caused through the use of Handicraft's trademarks and trade-dress, Woodcraft has negatively affected and continues to negatively affect Handicraft's goodwill. *Id.* As Judge Learned Hand eloquently stated in his concurrence with a denial of denial of a preliminary injunction on other grounds, in *Foundry Servs., Inc. v. Beneflux Corp.*, 206 F.2d 214, 216 (2d Cir. 1953):

> if [irreparable harm] includes the impossibility of ascertaining with any accuracy the extent of the loss[,] [t]hat has always been included in the meaning; and I cannot see how the plaintiff will ever be able to prove what sales the defendant's competition will make it lose, to say nothing of the indirect, though at times far-reaching effects upon its good will.

Injury to a reputation or goodwill is not easily measurable in monetary terms, and is often viewed by courts as irreparable. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) (The "possibility of permanent loss of customers to a competitor or the loss of goodwill" will satisfy the irreparable injury prong.); *Storck USA, L.P. v. Farley Candy Co., Inc.*, 797 F. Supp. 1399, 1412 (N.D. Ill. 1992) ("Damages occasioned by trademark or trade dress infringement are by they're very nature irreparable and not susceptible of adequate measurement for remedy at law. The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods[, and thus] [i]rreparable harm may result from the loss of goodwill in a given

product.").

In trademark infringement cases, a showing of "likelihood of confusion" between trademarks suffices to establish both irreparable injury and likelihood of success on the merits. *P. Daussa Corp. v. Sutton Cosmetics (P.R.) Inc.,* 462 F.2d 134, 136 (2d Cir. 1972) ("[I]n trademark cases, confusing similarity between [trade]marks is sufficient injury to warrant the issuance of a preliminary injunction."); *Omega Importing Corp. v. Petri-Kine Camera Co., Inc.,* 451 F.2d 1190, 1195 (2d Cir. 1971) ("Where there is [ ] such high probability of confusion [between products in trademark infringement case,] injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows.").

## 2. Handicraft Will Probably Prevail on the Merits

In order to demonstrate a reasonable probability of success, a movant must present a prima facie case, but need not show that it is *certain* to win. In its verified complaint, Handicraft has presented a prima facie case. *See* <u>Verified Complaint</u> at ¶¶ 1-90. As the Second Circuit Court of Appeal has stated, when:

> the balance of hardships tips decidedly toward plaintiff . . . it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.

*Hamilton Watch Co. v. Benrus Watch Co., Inc.,* 206 F.2d 738, 740 (2d Cir. 1953).

## 3. Balancing of Equities Favors Handicraft

The impact on Woodcraft of the granting of the requested preliminary injunction will be minor compared to the hardship to Handicraft that will occur if it is denied. Currently consumers on Saipan and elsewhere are confused when purchasing Woodcraft's product. Tourists and others seeking "Bo Jo Bo Wishing Dolls," as seen on TV are mistakenly purchasing Woodcraft's product

because of Woodcraft's use of confusingly similar trademark and trade-dress.

Granting the injunction would allow Woodcraft to continue to manufacture and sell the dolls it designed and sold prior to changing them to take advantage of Handicraft's television advertising of its product to the Japanese tourist market in May and September of 2005. The hardship to Woodcraft would not be significant, as it would simply be placed in the same position it was in earlier. On the other hand, Handicraft's hardship, should the injunction not be granted would include the loss of even more clients, goodwill and diminishment of its reputation, most of which may not be recoverable, even after the successful completion of this litigation.

Additionally, the Court should consider the fact that Woodcraft had *actual notice* of Handicraft's trademark and trade-dress, because defendant Tirzo J. Adriatico, before forming his business, was an employee of Handicraft, creating the product he now copies. *See* Verified Complaint at ¶ 42. Unlike the facts in *House of Hatten, Inc. v. Baby Togs, Inc.*, 668 F. Supp. 251 (S.D.N.Y. 1987), here the defendants were not "mere innocent infringers" and therefore the balancing of the hardships will be in Handicraft's favor.

The facts of this case are more similar to those of *Rubbermaid Commercial Products, Inc. v. Contico Int'l, Inc.*, 836 F. Supp. 1247 (W.D. Va. 1993), in which the court found that in the case of a trash-bin manufacturer's request for a preliminary injunction against a competitor for trade-dress infringement and unfair competition, the risk of harm to the competitor if the injunction was granted was not as great as the risk of harm to the manufacturer if the injunction was not granted.

Where there is evidence of intent to deliberately steal the trade-dress design and advertising of a plaintiff, the plaintiff has been in the business of producing the product for many years and the defendant only recently developed their product line, the balance of hardships would favor the

plaintiff seeking the preliminary injunction against the alleged infringement of trade-dress and copyright. *Lisa Frank, Inc. v. Impact Int'l, Inc.,* 799 F. Supp. 980 (D. Ariz. 1992) (the product in this case was brightly colored novelty stationery items for young girls). The conclusion is the same, although here Handicraft seeks the preliminary injunction against an infringer of trade-dress and trademark, as well as the violator of unfair competition laws.

Handicraft is aware that no preliminary injunction can be issued except upon the giving of security by the applicant, according to Federal Rule of Civil Procedure 65 ( c). For this reason, Handicraft stands prepared to post a bond or other security, should the Court deem it necessary and in the amount the Court "deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." *Id.*

Because the preliminary injunction that Handicraft seeks would only enjoin Woodcraft from using Handicraft's trademark and trade-dress, but not prevent Woodcraft from distribution and sale of its products under a different name and look, the amount of security required should not be large. *Moxie Co. V. Noxie Kola Co. of New York, Inc.,* 29 F. Supp. 167 (S.D.N.Y. 1939).

**4. Public Interest is Served by the Granting of Handicraft's Request**

Focusing on the public interest in the granting of the preliminary injunction is another way of inquiring whether there are policy considerations that bear on whether the order should issue. Here, Woodcraft's conduct is causing confusion of consumers as to the source of the goods they are purchasing. It is in the public interest for the Court to prevent businesses from palming-off its goods as those of another business. In fact, all that a plaintiff in a trademark infringement case must prove to establish liability and the necessity for an injunction to stop a defendant is the likelihood of confusion and hence of injury. *Pure Foods, Inc. v. Minute Maid Corp.,* 214 F.2d 792 (5th Cir. 1954). Here, Handicraft, through its <u>Verified Complaint</u>, has shown actual confusion and actual

injury.

Woodcraft's acts are prohibited by federal and CNMI statutes. The federal statute provides the Court with the power to grant an injunction to prevent these acts. 15 U.S.C. § 1116. It has been held that "when the acts sought to be enjoined have been declared unlawful or clearly are against the public interest, plaintiff need show neither irreparable injury nor a balance of the hardship in its favor. This is especially true when a statute expressly authorizes interlocutory injunctive relief." 11A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE, FEDERAL RULES OF CIVIL PROCEDURE 64 TO 65.1 § 2948.4 (2d ed. 1995).

## THE SECOND, ALTERNATIVE, *STANLEY* TEST USED IN THE NINTH CIRCUIT

As provided in *Stanley*, 13 F.3d at 1319, in lieu of the four-part test, a court may also issue a preliminary injunction if:

> the moving party demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor. Under this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.

*Stanley,* 13 F.3d at 1319. This alternative test allows a court to issue a preliminary injunction, even if a movant has not met all four prongs of the previously outlined test.

Regardless which of these tests the Court applies, Handicraft's request for a preliminary injunction should be granted.

Respectfully submitted this ___12-27-05___.

F. MATTHEW SMITH
Attorney for Plaintiff Saipan Handicraft