**ORIGINAL**

Clerk
District Court

Jan 4 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1  DANILO T. AGUILAR, F0198
   Attorney at Law
2  P.O. Box 505301
   First Floor, San Jose Court Bldg.
3  Cor. Ghiyeghi St. & Wischira Way
   San Jose, Saipan, MP 96950
4  TELEPHONE: (670) 234-8801
   FAX: (670) 234-1251
5
   Attorney for Defendant
6      MICRONESIA WOODCRAFT ENT., INC. et al.
7
8               UNITED STATES DISTRICT COURT
9                        FOR THE
10      DISTRICT OF THE NORTHERN MARIANA ISLANDS
11

| | |
|---|---|
| SAIPAN HANDICRAFT, | CIVIL ACTION NO. 05-0040 |
| Plaintiff, | |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| MICRONESIA WOODCRAFT ENT., INC., TIRZO J. ADRIATICO, individually and as President of Micronesia Woodcraft Ent., Inc., and JOHN DOES 1-40, | Date:    January 6, 2006 |
| | Time:    10:00 a.m. |
| Defendants. | Judge:   Hon. Alex R. Munson |

19      COMES NOW Defendants Micronesian Woodcraft, Enterprises, Inc.

20  and Tirzo J. Adriatico, through their counsel of record, Danilo T. Aguilar, Esq.

21  and hereby submit their opposition to Plaintiffs' request for preliminary

22  injunction. Defendants' opposition is supported by the attached memorandum of

23  points and authorities, the declaration of Defendant Tirzo J. Adriatico, and any

24  evidence that may be adduced at a hearing on this matter.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PRELIMINARY INJUNCTION

**I.    BACKGROUND.**

On or about December 1, 2005, Plaintiffs filed a complaint with this Court alleging eight different causes of action. Of these eight causes of action, only the first four causes of action arise under Title 15 of the United States Code. The current motion for preliminary injunction is brought to enforce the first cause of action under 15 U.S.C. §1125(a), which prohibits "false designation of origin, false misleading description of fact, or false or misleading misrepresentation of fact, which . . . is likely to cause confusion . . ."

Based upon Plaintiffs' moving papers, Plaintiffs' seek a preliminary injunction to prevent Defendants from utilizing Plaintiffs' alleged trademark in the term or name "Bo Jo Bo Doll" and "Legend of the Bo Jo Bo Wishing Doll."

In addition to preventing Defendants from using an alleged trademark, Plaintiffs also claim that they are entitled to protection for their "trade dress" of the dolls that they produce. Defendants' specifically claim that their protected trade dress encompasses the following: 1) use of hair on the doll; 2) use of a pistachio nut hut on the doll; 3) painting on of a mouth; 4) use of a "non-stiff" or "flat" skirt on the doll; 5) use of a label. Interestingly enough, the motion for preliminary injunction does not seek to stop Defendants from manufacturing or selling Bo Jo Bo Dolls, the motion only seeks to stop Defendants from utilizing these alleged trade dress features.

2

1

**II.     STANDARDS FOR INJUNCTIVE RELIEF.**

2

3

4

5

6

7

8

9

10

11

12

13

In order to obtain a preliminary injunction, a movant must demonstrate "either a likelihood or success on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardship tips sharply in its favor. *Sega Enterprises Ltd., Accolade, Inc.*, 977 F.2d 1510, 1517 (9th Cir. 1992).  Plaintiffs also state a similar standard articulated in *Stanely v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994), however Plaintiffs suggest that a court should first consider "irreparable harm" even before "likelihood of success on the merits."  It is Defendants' position that this Court should first consider "likelihood of success on the merits" before it reaches the issue of irreparable harm.

14

15

**III.     MERITS OF PLAINTIFFS' CLAIMS.**

16

17

18

19

20

21

22

23

24

The only issues for consideration in this preliminary injunction motion are the merits of Plaintiffs' alleged claim for trademark protection and protection of their alleged trade dress.  Although Plaintiffs' moving papers cite a number of cases that may provide some guidance to resolve the issues raised in the motion, Plaintiffs' statement of the law as their respective burden of proof is woefully inadequate.  Plaintiffs have not even stated what factors have to be considered to prevail on claims of trademark infringement and what must be shown to obtain trade dress protection under the Lanham Act.

25

26

27

It is Defendants' belief that once the Court is aware of the burden that must be carried by Plaintiffs to prove their respective claims, this motion for

28

3

1   preliminary injunction would be found to be without merit and accordingly, deny

2   this motion.

3       **A.    Plaintiffs' Trademark Claim.**

4           "The purpose of a trademark is to distinguish the goods of one person

5   from those of another . . . and its primary and proper function is to identify the

6

7   origin or ownership of the article to which it is affixed." *Dollcraft Co., et al. v.*

8   *Nancy Ann Storybook Dolls, Inc.*, 94 F.Supp. 1 (N.D. Cal. 1950), *citing Standard*

9   *Paint Co. v. Trinidad Asphalt Mfg., Co.*, 220 U.S. 446, 447 31 S.Ct. 456, 55 L.Ed.

10  536 (1911).

11          In trademark infringement claim, a distinction has to be made whether

12  the claimed mark is registered or not.  A threshold element in proving trademark

13
    infringement is that the party asserting infringement must have a valid trademark.
14

15  *Yellow Cab Company of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d

16  925, 928 (9th Cir. 2005).  If a trademark is registered, the holder of the trademark

17  is discharged from proving the validity of the trademark and would have prima

18  facie evidence of a valid trademark. *Id.*  If a trademark is not registered, the

19
    holder asserting infringement has the burden of proving that the claimed mark is
20

21  valid. *Id.*

22          An additional burden of proof also arises for a plaintiff in an

23  infringement action if a defendant raises a defense that the claimed mark is

24  generic.  If plaintiff can overcome the burden that a trademark is generic, the

25  plaintiff has another burden of proving that the claimed trademark has acquired

26  secondary meaning. *Id.*  In this case, Defendants Micronesian Woodcraft and Tirzo

27

28

                                        4

Adriatico believe that the claimed marks of "Bo Jo Bo Doll" and "Legend of the Bo Jo Bo Wishing Doll" have become generic terms.

The Ninth Circuit uses the "Who-are-you/What-are you test?" to determine if a trademark is considered generic or non-generic. *Yellow Cab*, 419 F.3d at 930. Under this test, the court first asks three distinct questions of a trademark: 1) Who are you?; 2) Where do you come from?; 3) Who vouches for you?. *Id.* A trademark is deemed non-generic if it can affirmatively answer one of these 3 questions. However, a generic mark will answer only the question "What are you?". *Id.* If the mark is generic, no further analysis is required and the alleged mark is not subject to protection. If the mark is not generic, the inquiry shifts again to the holder of the mark to prove acquisition of secondary meaning. *See Yellow Cab*, 419 F.3d 925.

The term Bo Jo Bo doll or Legend of the Bo Jo Bo Wishing doll is unable to answer any of the three questions imposed by the Ninth Circuit in *Yellow Cab*. By posing the question "What are you?", it is clear that the term "Bo Jo Bo Doll" and "Legend of Bo Jo Bo Wishing Doll" are descriptive in nature and do not evince a source or manufacturer of a the product. In *Dollcraft Co., et al. v. Nancy Ann Storybook Dolls, Inc,* the district court's analysis easily sums up why the trademarks claimed here are not valid:

> The names are descriptive ones which do not point to the origin or ownership nor indicate in the slightest degree the person, natural, or artificial, who manufactured such dolls or brought them to market. As so applied, all of the above names are incapable of performing the function of a trademark; they are not susceptible of exclusive appropriation by one party for they are names which, from the nature of the fact they are used to signify, may be employed by others with equal truth and equal right for the same purpose.

> 94 F.Supp. at 5.

5

If the mark is descriptive, Plaintiffs can still claim trademark protection, if they prove the trademark has acquired a "secondary meaning". No evidence has been brought forth to support such a finding. The court should find that the claimed trademarks are not valid nor protectible under the Lanham Act.

## B.    Plaintiffs' Trade Dress Claim.

Plaintiff correctly states that a party may have a claim under Section 43(a) of the Lanham Act for infringement of "trade dress". *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 775, 112, S.Ct. 2753, 2761 (1992); *see also Wal-Mart Stores, Inc. v. Samara Brothers*, 529 U.S. 205, 120 S.Ct. 1339 (2000). Plaintiff also properly defines "trade dress" as the "total image of a product and may include such features as size, shape color, texture, and graphics." *See* Plaintiffs' Memorandum of Points and Authorities, at 2. Coverage under Section 43(a) of the Lanham Act (codified as 15 U.S.C. §1125(a)) does not require that the trade dress to be registered with the U.S. Patent and Trademark Office.

To determine whether trade dress is entitled to protection, it must meet the following criteria:

      1)    the claimed trade dress is <u>non-functional</u>;

      2)    the trade dress is <u>distinctive</u>;

      3)    whether imitation of the trade dress will create a <u>likelihood of confusion</u>.

(Emphasis added).

*See Bayline Partners, L.P. v. Weyerhauser Co.*, 31 U.S.P.Q.2d 1051, _____ (1994).

6

"Out of all the elements for trade dress law, functionality may be the most important. 'Functionality is a potent public policy, for it trumps all evidence of actual consumer identification of source and all evidence of actual consumer confusion by an imitator'." *Id.*

Where a claimed trade dress is not registered, the burden of proof is on the plaintiff to show that the claimed trade dress is non-functional, I5 U.S.C. § 1125(a)(3); *see also HWE, Inc. v. JB Research, Inc.,* 993 F.2d 694, 696 (9th Cir. 1993).

In general terms, a product feature is functional if it is essential to the use on purpose of the article or it affects the cost or quality of the article. *Id.* Functional features of a product are features, which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product. *Bayline Partners v. Weyerhauser,* 31 U.S.P.Q.2d 1051, ____. Products or features which have not qualified for patent protection, but which are functional are in the public domain and are fair game for imitations and copying, *Id. citing Keene Corp. v. Paraflex Industries Inc.,* 653 F.2d 822, 824 (3rd Cir. 1981).

Courts have recognized that trade dress may be analyzed under 2 different types of functionality. The first type is "operational" functionality. This examines whether the proposed trade dress is a critical part of the function or use of the product. *See Donna-Margaret Goscicki v. Custom Dress & Copper Specialties Inc.,* 229 F.Supp.2d 743, 749 (E.D. Mich. 2002). The other test for functionality is "aesthetic functionality". The U.S. Supreme Court and other federal courts have utilized guidelines found RESTATEMENT (THIRD) OF

7

UNFAIR COMPETITION, as its test for "aesthetic functionality", which states in part:

> When aesthetic considerations play an important role in the purchasing decisions of prospective consumers, a design features that substantially contributes to the aesthetic appeal of a product may qualify as functional. As with utilitarian design features, however, the fact that the design performs a function by contributing to the aesthetic value of the product does not in itself render the design ineligible for protection as a trademark. A manufacturer thus does not forfeit trademark rights simply because prospective purchasers find the design aesthetically pleasing. A design is functional because of its aesthetic value only if it confers a significant benefit that cannot practically be duplicated by the use of alternative designs. Because of the difficulties inherent in evaluating the aesthetic superiority of a particular design, <u>a finding of aesthetic functionality will be made only when objective evidence indicates a lack of adequate alternative designs.</u> Such evidence typically is available only when the range of alternative designs is limited either by the nature of the design feature or by the basis of its aesthetic appeal. <u>The ultimate test of aesthetic functionality, as with the utilitarian functionality is whether the recognition of trademark rights would significantly hinder competition.</u>

(Emphasis added).

*Qualitex Company v. Jacobson Products Company,* 514 U.S. 159, 169, 115 S.Ct. 1300, 1306 (1999); *see also Donna-Margaret Goscicki v. Custom Brass & Copper Specialties,* 229 F. Supp 2d at 750-751.

Aesthetic functionality will not preclude a finding of non-functionality where the design also indicates the source. *Donna-Margaret Goscicki v. Custom Bras,s* 229 F.Supp.2d at 752.

In the case at hand Plaintiff has the burden of proving that the trade dress it seeks protection to wit, hair, a mouth, a pistachio nut hat, a skirt other than a distinct stiff and flat style, and a label on a "Bo Jo Bo" doll, are in fact "non-functional.

8

As to operational functionality, Defendants would concede that the trade dress features claimed by Plaintiffs would not meet the definition of being operationally functional.  However, these same features are in fact aesthetic traits on the Bo Jo Bo doll and may be deemed as aesthetically functional.

A finding of aesthetic functionality will be made only when objective evidence indicates a lack of alternative designs.  The burden that must be carried by Plaintiffs to show that their claimed trade dress is not aesthetically functional, is that Defendants can utilize other designs that can be made to these Bo Jo Bo dolls without utilizing their alleged trade dress.

The court only needs to look at the size of those dolls and the materials to objectively find that a lack of alternative designs exist for these products.  How many other ways can a Bo Jo Bo doll be designed if Plaintiffs' alleged trade dress features were not permitted?  The alleged trade dress are clearly utilized to improve the image of the doll. The claimed trade dress design asserted by Plaintiffs does not in any way indicate the source of origin or the manufacturer of the dolls.  If Plaintiffs now claim that the use of hair, a hat, a mouth, a non-stiff skirt, and label on a "Bo Jo Bo" doll are associated with their business, Plaintiffs have failed to meet their burden of showing the acquisition of a secondary meaning in the claimed trade dress.  Plaintiffs' are asking this court to stop Defendants from using labels, however, the label is the very thing that would indicate source and origin.

If the court were to recognize Plaintiff's alleged trade dress, it would effectively hinder competition in the sale of these Bo Jo Bo dolls.  Plaintiffs'

9

trade dress should be deemed aesthetically functional and accordingly the court should deny the motion for preliminary injunction on this basis alone.

Assuming *arguendo*, that the Plaintiff's have met their burden of showing their claimed trade dress in non – functional, Plaintiff would then have the additional burden of showing that the trade dress is distinctive and has acquired secondary meaning.  In *Two Pesos, Inc. v. Taco Cabana, Inc.,* the U.S. Supreme Court initially held that trade dress can be inherently distinctive and would be protectible under Section 43 (a) of the Lanham Act. 505 U.S. at 773.  In a later case U.S. Supreme Court carved out another rule for matters concerning unregistered trade dress design. In *Wal-Mart Stores, Inc. v. Samara Brothers*, 529 U.S. 205 (2000), the Court held that in an action for infringement of trade dress, a product's design is distinctive and protectible, only upon a showing of secondary meaning. 529 U.S. at 216.  When assessing distinctiveness of such a dress, a court should consider "whether it is likely to serve primarily as a designation of origin of product".  *EFS Marketing, Inc. v. Russ Bernie & Co., Inc.* 76F.3d 487, 491 (2nd Cir. 1996).

Plaintiffs have not bought forth any evidence to show that their alleged trade dress can be considered as being distinctive.  Plaintiff has also not demonstrated that its alleged trade dress has acquired some sort of secondary meaning to justify it being protected.  The features claimed by Plaintiff as trade dress do not meet the second part of the test for protection as a protectible trade dress. *See Bayline Partners v. Weyerhauser*, 31 U.S.P.Q.2d. 1051, ____.

10

1    If Plaintiff cannot demonstrate that its trade dress is non-functional

2    and that it is inherently distinctive with an acquired secondary meaning, the court

3    may dismiss the claim and deny the preliminary injunction with out having to

4    consider likelihood of consumer confusion. *EFS Marketing, Inc. v. Russ Bernie &*

5    *Co., Inc.* 76F.3d 487, 491 (2nd Cir. 1996).

6

7    Based on the foregoing analysis, it is clear that Plaintiff does not have

8    a likelihood to succeed on the merits as to its trade dress claim.

9

10    **C.    Irreparable Injury.**

11    Part of the equation for a preliminary injunction is a showing of

12    irreparable harm on the part of the movant.  Plaintiff states that it has suffered

13    irreparable harm in the form decreasing sales, loss of customer, clients,

14    advertising and goodwill that belonged to Plaintiff.

15

16    Despite these allegations, Plaintiff has not submitted any supporting

17    declarations nor have they made any specific factual allegations pertaining to

18    these losses they state in their moving papers.  It appears at this point, based upon

19    the moving papers, is that the injury claimed by Plaintiffs is purely economic in

20    nature.  Evidence of purely economic harm is insufficient to satisfy Plaintiff's

21    burden. *See Bayline Partners v. Weyerhauser,* 31 U.S.P.Q. 1051, _____.

22

23    A Plaintiff is not entitled to any presumption of irreparable harm

24    when it fails to show a reasonable likelihood of success on the merits of its trade

25    dress claim or even make out a prima facie case of trade dress infringement. *Id.*

26    It may even be unnecessary to consider irreparable injury, if Plaintiffs are not

27

28

11

likely to succeed on the merits. *Polaris Pool Systems v. Letro Products, Inc.,* 886 F.Supp. 1513 (C.D. Cal. 1995).

The Court can deny the motion for preliminary injunction on this basis of failing to show irreparable harm.

### D.    Serious Questions Raised and Balancing of Hardships.

Plaintiffs claim alternatively that they are also entitled to preliminary injunction on the basis that the balancing of equities tips in their favor. In determining a balance of hardships, the Court must also consider the hardship of the Defendants if the preliminary injunction were to issue. *Graham Webb, Intl. v. Helene Curtis, Inc.*, 17 F.Supp.2d 919 (D.Minn.1998). As part of Plaintiffs' claims of hardships, they state that confusion in the use of similar trade dress would result in additional losses of more clients, more goodwill, and the diminshment of reputation. However, Plaintiffs do not present any evidence to support their statement of hardship.

However, if the preliminary injunction were to issue preventing Defendants from selling its version of dolls with hair, a hat, or a skirt, it would result in a loss of about 60% of the company's income. *See* Declaration of Tirso Adriatico, ¶25. The company also has 22 employees involved in the production of Bo Jo Bo dolls. If the preliminary injunction were to issue, Defendants would be unable to sell or manufacture dolls with hair, a cap, a mouth, a skirt, and a label. Current production of dolls with either hair, a hat, or skirt accents accounts for about 90% of the dolls that Defendants manufacture and an injunction would essentially shut down the business. *See* Declaration of Tirso Adriatico, ¶21.

12

With the income loss combined with inability to manufacture and sell these dolls, Defendants will have to lay off employees in Rota and Saipan from its current level of 24 employees to less than 10 employees. *See* Declaration of Tirso Adriatico, ¶24.

The impact of a preliminary injunction on the Defendants would be devastating not only to its business, but it would have an effect increasing unemployment with a loss of 12 to 14 jobs in Rota and Saipan. The hardships of an injunction tip more heavily in favor of the defendants.

**E.    Public Interest**

Plaintiff claims that it would serve a public interest to issue the injunction and prevent businesses from "palming off" the goods of another business. Plaintiff assumes that its only burden in this case is to prove liability and the need for injunction is to show likelihood of confusion. See page 6 of Plaintiff's Memo of Points and Authorities.

It should be clear to the Court that the burden that must be met by Plaintiff is a much heavier burden that requires significant analysis even before the likelihood of confusion becomes a factor of determining liability.

As noted in Section II (B) of this Memorandum of Points and Authorities, the public policy of free competition is a much more important consideration. The Ninth Circuit in *E-Systems, Inc. v. Monitek*, 720 F.2d 604, 607 (9th Cir. 1983), recognized that "the objectives of trademark law are (1) to protect consumers from being misled as to the source of the products, (2) to prevent

13

impairment of the trademark's value to its owner and (3) to achieve both of the preceding two objectives consistent with free competition.

Unless Plaintiffs meet their burden of being able to prevail on the merits, granting the preliminary injunction would violate public policy. The high burden imposed upon claimants of trademarks is to ensure that such trademarks are valid and would be entitled to trademark protection as a matter of law. Without such a minimal showing, trademark protection would be nothing more than an avenue to stifle free competition.

## IV. CONCLUSION

A party seeking a preliminary injunction has a difficult burden to carry in order to obtain such relief. In this case, Plaintiffs have the initial burden of showing a likelihood of prevailing on the merits. In a trademark infringement matter, specific requirements must be met to prove violations under the Lanham Act.

With the facts before the Court, Plaintiffs are simply unable to meet initial burdens of proof that Plaintiffs alleged trademarks are even protectible under the Lanham Act. Plaintiffs have not presented any serious questions regarding alleged infringement or trademarks. In fact, the inverse has occurred and serious questions have been raised as to the merits of Plaintiffs' claims.

Plaintiffs have completely wasted this Courts' time by filing this motion for preliminary injunction and not being able to meet at least their initial burden.

14

1    Based on the foregoing, the Court should deny the Motion for

2  Preliminary Injunction.

3    Respectfully submitted this 4th day of January, 2006.

4

5

6

7  _____

8  **DANILO T. AGUILAR, F0198**
   Attorney for Defendants
9  Micronesian Woodcraft, Ent., Inc. and
   Tirso Adriatico.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15