DANILO T. AGUILAR, F0198
Attorney at Law
P.O. Box 505301
First Floor, San Jose Court Bldg.
Cor. Ghiyeghi St. & Wischira Way
San Jose, Saipan, MP 96950
TELEPHONE: (670) 234-8801
FAX: (670) 234-1251

Attorney for Defendant
MICRONESIA WOODCRAFT ENT., INC. et al.

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| SAIPAN HANDICRAFT,<br><br>Plaintiff,<br><br>v.<br><br>MICRONESIA WOODCRAFT ENT., INC., TIRZO J. ADRIATICO, individually and as President of Micronesia Woodcraft Ent., Inc., and JOHN DOES 1-40,<br><br>Defendants. | CIVIL ACTION NO. 05-0040<br><br>**DECLARATION OF TIRSO J. ADRIATICO IN SUPPORT OF OPPOSITION TO PRELIMINARY INJUNCTION** |

I, Tirso J. Adriatico, hereby depose and say:

1. I am a citizen of the Philippines and with a long-term business permit since 1993.

2. I have been a resident of Rota since 1983 and was a brief resident of Saipan from 1990 to 1992;

3. I was first exposed to Bo Jo Bo dolls in 1983 when I was doing work with Mr. Capati's nephew. During that time, I was employed by Joaquin Atalig. I also learned in 1983 that the Taimanao family in Rota was already making the Bo Jo Bo dolls;

4. In 1990, I came to Saipan and worked for Plaintiff from 1991 to 1992. Upon expiration of my work permit in 1992, my employment contract with Plaintiff was not renewed;

5. Since I am qualified to get a business license as a sole proprietor and having the basic knowledge, I decided to start Micronesia Woodcraft Ent., Inc. I am currently the company's President and General Manager;

6. In 1994, Micronesia Woodcraft Ent., Inc. started producing the Bo Jo Bo dolls in direct competition with the Plaintiff. I was the sole employee of the company then and I was creating and producing the dolls, However, before making the dolls, I approached Mr. Gus Camacho to ask permission to make the dolls after hearing from Plaintiff's employees that Mr. Camacho was the original creator;

7. Mr. Gus Camacho gave his permission for Micronesia Woodcraft Ent., Inc. to make the dolls citing that the product is locally made and anybody can make the dolls;

8. The initial design of the doll was – it had no hair, it had eyes and nose and a skirt. In addition, Micronesia Woodcraft Ent., Inc. started printing the "Legend of the Bo Jo Bo Dolls" and used it with the dolls;

9. In 1996, Rota Resort requested that hair, a seashell hat and colored skirt be added to the doll. At this point in time, while I was working on the Resort's request, Plaintiff was also using hair and a hat;

10. Plaintiff was aware that Micronesia Woodcraft Ent., Inc. was selling Bo Jo Bo dolls with the additional trimmings since 1996 because these dolls were sold in Garapan, Saipan, in addition to my sales in Rota;

11. In 1996, the business had grown to a point that I had to ask my wife to help in the business and had to hire two (2) employees. The company was then selling an average of 100 dolls a month;

12. In 1997, I had to hire three (3) more employees to produce the dolls and other wood products. It was also during this year that I started to sell the dolls at the Flame Tree Festival and every year thereon;

13. In 1998, I hired another four (4) employees to help in the growing demands of the expanding business. The average monthly sales had steadily increased to 200-300 dolls per month;

14. On or about October 1999, I started selling Bo Jo Bo dolls at the Garapan Street Market up to the present;

15. In 2000, I hired another four (4) employees to assist in making the dolls and other woodcraft products;

16. In 2001, I received a request from Crystal Palace in Garapan to produce Bo Jo Bo dolls with a pistaschio hat;

17. I also started selling the Bo Jo Bo dolls tourists at Banzai Cliff since 2003 after obtaining a permit from the Marianas Public Lands Authority;

18. In 2005, I had to hire another three (3) non-resident and six (6) resident workers to cope up with the growing demand for Bo Jo Bo dolls and other woodcraft products. At the present time, Micronesia Woodcraft Ent., Inc. sells an average of 1,000 dolls a month;

19. At present, I have 24 full time employees producing Bo Jo Bo dolls and other crafts at the production sites in Rota and Saipan. My employees are comprised of 18 non-resident workers and 6 local residents of Saipan;

20. Production and sales of Bo Jo Bo dolls currently comprise 60% of the income for Micronesia Woodcraft Ent., Inc.;

21. Approximately 90% of the Bo Jo Bo dolls manufactured by Micronesia Woodcraft Ent., Inc. utilize hair, a mouth, a pistaschio nut cap, a grass skirt and a label indicating that Micronesia Woodcraft Ent., Inc. is the manufacturer;

22. All these times that I have produced varied versions of these dolls, Plaintiff was aware of my sale of dolls and the improvements thereon, and have not received any complaint about it;

23. Disputes only started to arise this year when orders of Bo Jo Bo dolls increased;

24. If a preliminary injunction were to issue and Micronesia Woodcraft Ent., Inc. was prevented from selling its Bo Jo Bo dolls, manufacturing of these dolls would essentially cease and will result in workforce reductions in the company. I believe I will have to cut my workforce in Rota and Saipan to 10 employees or less;

25. A preliminary injunction will result in 60% loss of its current income and the continued viability of the business will be in doubt;

26. The issuance of a preliminary injunction will undo over 10 years of hard work to find customers and expanding my business;

27. A preliminary injunction would pose a substantial hardship to continue operating and essentially grant Plaintiffs a monopoly in sales of Bo Jo Bo dolls;

28.   I declare under penalty of perjury under the laws of the United States that the foregoing is true and to the best of my knowledge.

Dated this ____4th____ day of January, 2006

_____
TIRSO J. ADRIATICO

5