FILED
Clerk
District Court

JAN -5 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

F. MATTHEW SMITH
LAW OFFICE OF F. MATTHEW SMITH, LLC
2nd Floor, UIU Building, San Jose Village
P.O. Box 501127
Saipan, MP 96950
Telephone Nos. (670) 234-7455 / (670) 234-7427
Facsimile No. (670) 234-7256

Attorney for Saipan Handicraft.

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| SAIPAN HANDICRAFT, ) | | Civil Action No. 05-0040 |
| ) | | |
| Plaintiff, ) | | **PLAINTIFF'S REPLY TO** |
| ) | | **DEFENDANTS' OPPOSITION** |
| vs. ) | | **TO PLAINTIFF'S MOTION FOR** |
| ) | | **PRELIMINARY INJUNCTION** |
| MICRONESIAN WOODCRAFT ENT., ) | | |
| INC.; TIRZO J. ADRIATICO, ) | | Date: January 6, 2006 |
| individually and as President of ) | | Time: 10:00 a.m. |
| Micronesian Woodcraft Ent., Inc.; ) | | Judge: Honorable Alex R. Munson |
| and JOHN DOES 1-40, ) | | |
| ) | | |
| Defendants. ) | | |
| _____) | | |

      Plaintiff Saipan Handicraft ("Handicraft) hereby submits its Reply to Defendants' Micronesian Woodcraft Ent., Inc. and Tirzo J. Adriatico (collectively "Woodcraft") Opposition to Handicraft's Motion for Preliminary Injunction ("Opposition") and supporting Declarations of Adela Capati and Augustine T. Camacho.

**Factual Summary**

      As presented in Handicraft's Verified Complaint (filed 12/01/05) ("Complaint"), Handicraft has been in business in Saipan since 1984 and has been continuously producing traditional-style hand crafted dolls made of bayogo since that

**ORIGINAL**

time. Complaint at ¶ 27. From the beginning, Handicraft has been using the trademarks "Bo Jo Bo Wishing Doll" and "Legend of the Bo Jo Bo Wishing Doll." *Id.* Handicraft has adopted a distinctive trade-dress that can be seen in Complaint, Exhibit E.

Defendant Tirzo J. Adriatico ("Tirzo") was employed by Handicraft during 1992 and 1993. Complaint at ¶ 42. After leaving Handicraft's employment, in 1994 Tirzo, through his company Woodcraft, began producing traditional-style hand crafted dolls. Declaration of Tirso J. Adriatico In Support of Opposition to Preliminary Injunction ("Adriatico Declaration") at 2, ¶ 6, Declaration of Adela Capati in Support of Preliminary Injunction ("Capati Declaration") at ¶ 8.

Woodcraft modified the look if its dolls over time to more and more closely resemble the look of Handicraft's dolls. Complaint at ¶¶ 40, 45, 46, 47; Adriatico Declaration at ¶¶ 8 (added card with Legend), 9 (added hair and shell hat and colored shirt), 16 (changed hat to pistachio nut), 22 (over time produced "varied versions" of the doll), Capati Declaration at ¶ 9.

Woodcraft had actual knowledge of Handicraft's trademarks and trade-dress and has willfully and maliciously infringed upon Handicraft's rights. Complaint at ¶¶ 40- 52, Capati Declaration at ¶¶ 13, 14.

## Standard for Injunctive Relief

There is no disagreement about the elements of the four-prong test that the Court must consider in determining whether to grant or deny Handicraft's motion for a preliminary injunction. However, Woodcraft takes exception to Handicraft's suggestion that the Court should first consider "irreparable harm" even before "likelihood of success

on the merits." According to the court in *Blackwelder Furniture Co. of Statesville, Inc. v. Selig Mfg. Co., Inc.*, 550 F.2d 189, 195 (4th Cir. 1977):

> [T]he *first step* in a Rule 65(a) situation is for the court to balance the "likelihood" of irreparable harm to the plaintiff against the "likelihood" of harm to the defendant; and if a decided imbalance of hardship should appear in plaintiff's favor, then the likelihood-of-success test is displaced by [the] formulation: It will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.

(Emphasis added). Regardless of which order the Court choose to consider the four prongs, Handicraft's motion should be granted.

### I. Likelihood of Handicraft's Success on the Merits

Woodcraft seems to imply in its Opposition, that Handicraft must put on its entire case, proving each element of each allegation in order to prevail on its motion for a preliminary injunction. This is not the case. Handicraft need not show that it is certain to win but must present a prima facie case. *Blackwelder Furniture Co. of Statesville, Inc.*, 550 F.2d at 193 ("It is sufficient to grant the motion [for preliminary injunction] if the court is satisfied that there is a probable right and a probable danger, and that the right may be defeated, unless the injunction is issued, and considerable weight is given to the need of protection to the plaintiff as contrasted with the probable injury to the defendant." (*quoting Sinclair Refining Co. v. Midland Oil Co.*, 55 F.2d 42, 45 (4th Cir. 1932))).

#### A. Handicraft's Rights to Trademark are Valid

Woodcraft alleges that Handicraft has the burden of proving that the claimed mark is valid, and Handicraft has in fact, presented a prima facie case that its trade marks

3

are valid. See Complaint at ¶ 25 (prior user of trade marks abandoned them), ¶ 27 (Handicraft began using trade marks and has continuously used the trade marks) and ¶¶ 31, 36-39 (trademarks are understood to reference Handicraft and its product).

The right to a trademark is acquired by appropriation and use as such. *United Drug Co. v. Theodore Rectanus Co.,* 248 U.S. 90, 39 S. Ct. 48, 63 L. Ed. 141 (1918). Handicraft has presented evidence to this effect. See Complaint at ¶¶ 25, 27. The right to the exclusive use of a particular trademark is ordinarily founded on priority of appropriation, that is, the claimant of the trademark must have been the first to use or employ the mark. *Columbia Mill Co. v. Alcorn,* 150 U.S. 460, 14 S. Ct. 151, 37 L. Ed. 1144 (1893). Handicraft claims it was using the trademarks prior to Woodcraft's use (Complaint at ¶¶ 27, 40-45) and Woodcraft admits that Handicraft was using the trademarks prior to its first infringing use of them (Adriatico Declaration at ¶ 6). If any prior users of the Handicraft's trademarks "Bo Jo Bo Wishing Doll" and "Legend of the Bo Jo Bo Wishing Doll" had trademark rights, their rights were lost by abandonment, and if the owner of a trademark abandons it, another may thereafter use it and thus obtain rights. *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 36 S. Ct. 357, 60 L. Ed. 713 (1916); 3 A.L.R.2d 1226, 1236 § 5.

Woodcraft raises the defense that Handicraft's trademarks are generic words or terms, and claims Handicraft must "overcome the burden that a trademark is generic." Opposition at 4. In fact, Woodcraft has not provided evidence that Handicraft's trademarks are generic and thus, Handicraft has no burden to disprove an unsubstantiated alleged defense.

4

While it is true that a generic word or term is not subject to exclusive appropriation as a trademark, *Kellogg Co. v. Nat'l Biscuit Co.,* 305 U.S. 111, 59 S. Ct. 109, 83 L.Ed. 73 (1938), and it is also true that a word or term properly subject to use as a trademark may "become generic" if it is so associated in the public mind with the article to which it is applied as to become indicative of a class of articles in general and not of a particular item, *Saxlehner v. Wagner,* 216 U.S. 375, 30 S. Ct. 298, 54 L. Ed. 525 (1910), what Woodcraft does not relate to the Court is that when a manufacturer invents a new name, consisting of a new word or words in common use, applied in a novel way and that name is not descriptive of the article, its qualities ingredients, or characteristics, but is arbitrary or fanciful, then the manufacturer is entitled to be protected in the use of that name, notwithstanding that the name has become so generally known that it has been adopted by the public as the ordinary appellation of the article, *Hamilton-Brown Shoe Co. v. Wolf Bros & Co.,* 240 U.S. 251, 36 S. Ct. 269, 60 L. Ed. 629 (1916). An excellent example of this would be Xerox® which has been adopted by the public as a name for photocopiers, yet the trademark rights have not been lost to the owner. Similarly, although many in the community refer to all traditional-style hand crafted dolls made of bayogo as "Bo Jo Bo Wishing Dolls," it does not mean that Handicraft has lost its trademark rights or protections.

Woodcraft claims that even if Handicraft proves its trademarks are not generic, it must still also prove that its trademarks have acquired a secondary meaning. This is not the case. A fanciful trademark, such as Handicraft's, (that is, words with no meaning other than as referring to a particular product), is inherently distinctive and is entitled to protection immediately upon use.

Handicraft's trademarks are valid and can be protected under the Federal Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.* "The second comer [to the marketplace] has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer." *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.* 281 F.2d 755, 758 (2nd Cir. 1960).

### B.    Handicraft's Rights to Trade Dress are Valid

Where a manufacturer has adopted a particular dress, design, or combination of features, producing a peculiar visual appearance for its goods, the manufacturer is entitled to be protected in its use as against any other person who has imitated it in such a way as to mislead the public. *Id.* Furthermore, a multiplicity of similarities between the products is evidence of conscious imitation and unfair competition. *Id.*

Woodcraft concedes that Handicraft's trade-dress is not operationally functional. Opposition at 9. However, Woodcraft argues that Hanidcraft's trade-dress has aesthetic functionality. Aesthetic functionality is a principle that a trade-dress in not protectable if the feature is attractive and appeals to consumers in a way that limits the availability of alternative designs.

By its own admission, Woodcraft recognizes that there are "varied versions of these dolls," Adriatico Declaration at 4, ¶ 22, and that it has produced a number of these. Woodcraft also admits that 10% of its sales of traditional-style dolls are of a variation that do not infringe on Handicraft's trade-dress by incorporating elements of Handicraft's unique design. Adriatico Declaration at 4, ¶ 21.

In its Opposition, Woodcraft posed the question "[h]ow many other ways can a Bo Jo Bo doll be designed if Plaintiff's alleged trade dress features were not permitted?" Opposition at 9. Besides Woodcraft's own admissions, detailed above, Handicraft offers exhibits of traditional-style hand crafted dolls from a variety of manufacturers, which incorporate a plethora of designs that do not infringe on Handicraft's trade-dress and with the use of the smallest amount of imagination and creativity, the Court could undoubtedly think of innumerable more options and variations. For some reason, Woodcraft, has not exerted the creativity needed to develop its own designs, trade-dress and trademarks, but instead has chosen to act as a copy-cat and thief.

Recognition of Handicraft's trade-dress would not hinder competition in the sale of traditional-style hand crafted dolls made of bayogo. The Court should not find Handicraft's trade-dress aesthetically functional for this reason.

## II.   Irreparable Injury to Handicraft

Woodcraft alleges that Handicraft has not submitted any supporting declarations pertaining to the irreparable injury that it will suffer if the preliminary injunction is not granted. However, Handicraft, through its Complaint, provides evidence that it had contracts with DFS and with other retail shops to supply dolls for sale, which contracts were later cancelled; it also provided evidence of the good will the company had established; and of the advertising that it had performed to promote its products.

A showing of "likelihood of confusion" that Woodcraft has caused through its use of a confusingly similar trade-dress and the use of Handicraft's trademarks is sufficient to establish both irreparable injury and the likelihood of success on the merits. *P. Daussa Corp. v. Sutton Sosmetics (P.R.) Inc.*, 451 F.2d 1190, 1195 (2nd Cir. 1971).

Handicraft has shown a likelihood of confusion and thus has met any burden to prove irreparable injury. The additional injury to Handicraft's good will and client relationships also constitute irreparable injury.

### III. Balancing of Equities Favors Handicraft

Woodcraft is misguided in its claims of the "harm" it will suffer if the injunction is granted. Loss of revenue that it will experience if forced to stop using stolen designs and trademarks should not be considered by the Court. Neither should the argument that employees, working to produce counterfeit products may lose their jobs sway the Court. A company that employs individuals to enter movie theaters with video cameras and illegally record the movie so that the company may sell the pirated product, could similarly make the argument that hundreds will be placed "out of work" if the company is not allowed to sell pirated movies. No one would take this argument seriously, and no one should take the argument of Woodcraft seriously either. There is no public interest in having people employed in illegal endeavors.

Further, rather than fire the employees, Woodcraft could simply divert the work of these employees to the production of dolls that do not infringe upon Handicraft's trademarks and trade-dress.

Woodcraft had actual notice of Handicraft's trademarks and trade-dress. It has consistently and continuously acted in wanton disregard of Handicraft's rights. The bad actor in this case is Woodcraft, and Handicraft is the innocent victim. The Court should weigh the hardships sharply in Handicrafts favor.

Woodcraft asserts that it sought "permission to make the dolls." Adriatico Declaration at ¶¶ 6-7. The problem is, he sought permission from the wrong party. Gus Camacho had abandoned any interest he had in the trademarks more than 15 years prior to the date that Woodcraft claims it sought permission to begin making dolls (1994). Complaint at ¶ 25, Adriatico Declaration at ¶ 6, Declaration of Augustine T. Camacho in Support of Preliminary Injunction ("Camacho Declaration"). In fact, according to Gus Camacho, the first and only time he ever spoke with Mr. Adriatico was in the Fall of 2005. Camacho Declaration at ¶¶ 2-3.

Woodcraft never sought the permission of Handicraft to use its trademarks, in fact the permission would not have been granted.

> It is permissible in the American competitive economy for the second comer to endeavor to capture as much of the first comer's market as he can. He must do this, however, by giving his product a name and dress descriptive and fanciful in its own right and selling it on its own merit, not by confusing the public into mistakenly purchasing his product for his competitor's. The second comer must create a reputation of its own and not trade on the goodwill of another product already established at considerable cost and risk.

*Harold F. Ritchie, Inc.*, 281 F.2d at 758. Because Woodcraft has done each of the impermissible things outline above, the balancing of hardships should favor Handicraft.

IV. **Public Interest is Served By the Granting of Handicraft's Request**

The dual public policies that the Court must consider are the desire to encourage free competition and the desire to protect consumer from being misled as to the source of

9

a product it purchases. The granting of the injunction serves both of these policy interests, as Woodcraft would still be able to compete, and in a more fair manner, in that it would need to promote it's own designs and not continue its infringement on Handicraft's rights, while at the same time the confusion to consumers would be removed.

## Conclusion

In conclusion, Handicraft has provided, through it verified complaints, its motion and its memorandum of points and authorities and supporting declarations, sufficient evidence for this Court to grant its requested injunction. With the addition of the Adriatico Declaration, Opposition and this Reply and supporting documents, further testimony on the motion may be unnecessary.

The right of Handicraft are clearly established. The violations of those rights by Woodcraft are clearly established. The need for the injunction in the pendency of this matter is obvious. Handicraft again respectfully requests the Court issue the injunction.

Respectfully submitted this _____5th_____ day of January, 2006.

_____
F. MATTHEW SMITH
Attorney for Plaintiff