F. MATTHEW SMITH
Law Office of F. Matthew Smith, LLC
2nd Floor, UIU Building
P.O. Box 501127
San Jose, Saipan, MP 96950
Telephone No.: (670) 234-7455/234-7427
Facsimile No.: (670) 234-7256

Attorney for Saipan Handicraft.



FILED
Clerk
District Court

JAN - 5 2006

For The Northern Mariana Islands
By_____
            (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| SAIPAN HANDICRAFT, | Civil Action No. 05-0040 |
| Plaintiff, | **DECLARATION OF ADELA CAPATI** |
| vs. | **IN SUPPORT OF PRELIMINARY** |
| | **INJUNCTION** |
| MICRONESIAN WOODCRAFT ENT., INC.; TIRZO J. ADRIATICO, individually and as President of Micronesian Woodcraft Ent., Inc.; and JOHN DOES 1-40, | Date:  January 6, 2006<br>Time: 10:00 a.m.<br>Judge: Honorable Alex R. Munson |
| Defendants. | |

I, Adela Capati, do hereby depose and say that:

1. I am one of the managers/owners of Plaintiff Saipan Handicraft and have personal knowledge regarding the matters stated herein and, in addition to all the matters contained in our Verified Complaint (filed December 1, 2005), I am also able to testify to the following:

2. Defendant Tirzo Adriatico, by and through his company Micronesia Woodcraft Ent., Inc., has made it a practice to steal our designs and ideas.

3. In 1994, Mr. Adriatico began copying and using our company's designs for wood carvings (*e.g.*, coconut crabs, dolphins, blow fish, marlin, bath fish, turtles and story boards) without

**ORIGINAL**

our permission, in addition to starting his business with a name that was confusingly close to our own at that time.

4.      In 1994, I went to the CNMI Office of the Attorney General, along with my husband, Rodrigo Capati, to complain about the unfair business practices of Mr. Adriatico and we were told by an Assistant Attorney General that they would contact Mr. Adriatico to tell him to stop copying our designs and to create designs of his own.

5.      In or around early 1995, I also sought help from the Carlsmith law firm on Capital Hill but could not afford representation to fight for our rights at that time.

6.      Without help, and being unable to stop Mr. Adriatico, our company had no choice but to abandoned our woodcarving designs, change our name (to distinguish it from his) and focus on production of the only distinctive asset we had left, the Bo Jo Bo Wishing Doll.

7.      For decades our company had worked to promote the "Bo Jo Bo Wishing Doll" name and legend and to create our own distinctive design for the dolls using a pistachio nut hat, shaped and colored skirts, long hair and a mouth.

8.      The traditional-style dolls that Mr. Adriatico and his company first started producing in 1994 were distinctively different in name and look from our dolls. Often his dolls hung side by side with ours at local stores and consumers were not confused, because his dolls had stiff skirts, no hat, no hair, no mouth, no name, legend or card. The look and design of their dolls was significantly different.

9.      In or around 2005, I noticed that the Woodcraft dolls began to look more and more identical to our dolls. We lost all distinction. They copied - exactly - our name, our legend, our card, our skirt, our hair, our hat, and our mouth.

10. With an identical doll, and by undercutting our price, Woodcraft began systematically pushing us out of many of the stores that used to buy dolls from us.

11. Before Woodcraft started engaging in this unfair practice, our dolls could be found for sale in more than 20 different shops including: DFS in all hotels in Saipan and many on Guam, Joeten Ent., Hakubotan, Mama's Stores, LA Gift Shop, Made in Saipan, Crystal Palace, Maganda Utang, I Collection in Guam, 123 Discount Stores, ABC Stores, Tamaya Gift Shop, the gift shop in World Resort (formerly Diamond Hotel), Rota Pau Pau Hotel, Maui Divers, Princess Corp., and Shopping Paradise to name some, and we also sold overseas in Japan.

12. Now, as a direct result of their unfair competition, we have lost our ability to place dolls locally in all but the following four local stores: Joeten, Ent. , Mama's Store, Crystal Palace and ABC Stores. Even Joeten, Ent. and ABC Stores were only recently won back to carry our product, after much effort and upon institution of this suit. I am not certain if we will ever be able to win back the other former clients due to the damage Woodcraft has done to our reputation and goodwill.

13. I was alarmed by this trend and in July of 2005, I called up Woodcraft and asked to speak with Mr. Adriatico. He did not take my call. Instead, I had to ask the employee who answered the phone to tell his boss to stop copying our product and using our name "Bo Jo Bo Wishing Doll" and our legend. I ask the employee to tell Mr. Adriatico that we did not fight him when he stole our wood carving designs but we were not going to allow him to also take this last product that we had left as well. We did not want them stealing our business from us a second time.

14. Again, on October 2, 2005, I approached a Woodcraft employee who was selling, for a very low price, dolls identical to ours out at Suicide Cliff. I told them to stop selling copied

products and to come up with their own name and design. I took photographs of the booth and signs. During that same month, my attorney also sent other notices to them.

15.     For more than two decades our business has worked to carefully created a brand name and distinct look and product. Our business started with just 3-4 employees and now we employ ten people. We also purchase bayogo from approximately 15 different vendors on Rota and Saipan. It is likely that other employees would have been hired if business had not been unfairly eroded by Mr. Adriatico.

16.     Handicraft did not object to the dolls previously produced by Woodcraft because they did not use our name, legend or distinctive look. It was only after they unfairly copied our exact look that we objected, as we could not allow them to once again to steal our business.

17.     Mr. Adriatico claims in his declaration at paragraph 2, that he has been a resident of Rota since 1983 and that he was a brief resident of Saipan from 1990 to 1992. I have quarterly payroll tax filings that show Mr. Adriatico was employed by our company, on Saipan, during each quarter of 1993, and he therefore must have been residing here, or else he was daily commuting from Rota. Additionally, when we hired Mr. Adriatico, at the repeated request of his wife, who was then residing on Saipan, we hired him from the Philippines as a non-resident worker. He was not a local resident as he seems to imply. Mr. Adriatico's work permit did not expire in 1992, as he states in his declaration at paragraph 4. In fact he continued to work for our company through 1993 while at the same time starting his own business.

18.     Mr. Adriatico claims in his declaration at paragraph 3, that he was "doing work with Mr. Capati's nephew" in 1983. Mr. Capati, my husband, does not have a nephew that ever worked with Mr. Adriatico, and Mr. Capati has no nephews on Rota, where Mr. Adriatico claims he was

living at that time.

19. Mr. Adriatico claims in his declaration at paragraph 9, that in 1996 he began using a seashell hat on his dolls. This is another example of his copy of our design because our company was using a seashell hat from 1987 to 1993. One reason we changed the hat to a pistachio nut shell was because the seashells frequently shattered when drilled. I got the idea of using pistachio nut shells for a hat from my co-workers, who were frequently eating pistachio nuts.

20. Mr. Adriatico claims in his declaration at paragraph 10, that his company was selling dolls "with additional trimmings" since 1996 and that we were aware of that fact. We were aware that Mr. Adratico was selling dolls in 1996, but the dolls he was selling then did not have the features that we claim as distinctly our own, that is, the pistachio nut hat, hair, a mouth, the softer skirt and so forth. He was selling the original design of his dolls, which did not contain these features, nor did it have a card attached with our trademarks. Likewise, in paragraph 12, Mr. Adriatico claims he was selling dolls at the Flame Tree Festival, and we agree that he was, we were aware of this fact. However, the dolls he was selling at that time were his original design, not the type that were a duplicate of our design. In paragraph 14, Mr. Adriatico states he began selling at the Garapan Street Market, and we saw him do this, but again it was his prior design of dolls. We do not dispute the right of others to sell traditional-style hand crafted dolls made of bayogo or other local products. We only dispute when others steal our ideas instead of developing their own and when others use our trademarks, which we have spent years of effort and energy promoting.

I declare under penalty of perjury under the laws of the Unites States of America that the foregoing statements are true to the best of my knowledge; and make this declaration this January 5, 2006, at San Jose, Saipan, CNMI.

_____
ADELA CAPATI