F I L E D
Clerk
District Court

JAN 1 7 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| SAIPAN HANDICRAFT,<br><br>Plaintiff,<br><br>vs.<br><br>MICRONESIAN WOODCRAFT ENTERPRISES, INC., TIRZO J. ADRIATICO, individually and as President of Micronesian Woodcraft Enterprises, Inc., and JOHN DOES 1-40,<br><br>Defendant. | Case No. CV-05-0040<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

THIS MATTER came before the court on Friday, January 6, 2006, for hearing of plaintiff's motion for a preliminary injunction requiring Defendant to cease using Saipan Handicraft's mark and dress. Plaintiff Saipan Handicraft appeared personally and by and through its attorney, Matthew Smith; defendant Micronesian Woodcraft and Tirzo J. Adriatico appeared personally and by and through its attorney, Danilo Aguilar.

On December 1, 2005, plaintiff Saipan Handicraft ("Handicraft" or "Plaintiff") filed this lawsuit against defendant Micronesia Woodcraft Enterprises ("Woodcraft" or "Defendant") for use of false designation in interstate commerce, trademark infringement, trade dress infringement, unfair competition, tortious interference with contract, interference with business relationships, interference with competitor's contract for supply of raw materials, and violation of the Commonwealth of the Northern Mariana Islands ("CNMI" or "Commonwealth") Consumer Protection Act, 4 CMC § 5101. Handicraft, however, only asserts trademark and trade dress infringement under common law and the Lanham Act in its motion for preliminary injunction.

THE COURT, having fully considered the arguments of the parties, GRANTS IN PART AND DENIES IN PART plaintiff's motion for preliminary injunction.

## I. STANDARDS FOR PRELIMINARY INJUNCTION

For a preliminary injunction to be granted, plaintiff must meet one of the following standards. The first standard is the traditional four prong test: irreparable injury, likelihood of success on the merits, balance of equities, and the public interest. *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 674-75 (9th Cir. 1984) (quoting *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 526 F.2d 86, 87 (9th Cir. 1975)). However, in the case of trademark infringement irreparable injury is presumed if the court finds that plaintiff is likely to succeed on the merits. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 n.4 (9th Cir. 2000) (quoting *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999)).

The second alternative standard, which specifically applies to trademark cases, is a sliding scale test. *Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir. 1998). "A plaintiff is entitled to a preliminary injunction in a trademark case when it demonstrates either (1) a combination of 'probable success on the merits' and 'the possibility of irreparable injury' or (2) the existence of 'serious questions going to the merits' and that 'the balance of hardships tips sharply in his favor.'" *GoTo.com, Inc.*, 202 F.3d at 1204-05 (quoting *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985)). "They are not separate tests but rather 'outer reaches of a single continuum.'" *Baby Tam & Co.*, 154 F.3d at 1100 (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980)).

//
//
//
//

2

## II. FACTS

The court finds that Plaintiff is likely to prove the following facts.

Both plaintiff Saipan Handicraft and defendant Micronesian Woodcraft make and sell a variety of wood and handicraft products, including what they call "Bo Jo Bo Wishing Dolls" or "Bojo Bo Wishing Dolls."

The first Bo Jo Bo Wishing Doll was designed in the early 1960s by Dr. William Vitarelli, Enrique Kisa, Gus Camacho, and Manuel Kisa (collectively "original creators"). Dr. Vitarelli, who was employed by the Education Department of the Trust Territory of the Pacific Islands, designed the Bo Jo Bo Wishing Doll to create a local handicraft item that the Commonwealth could sell and display at the local arts festival.

The 1960s style Bo Jo Bo Wishing Doll was primarily made of small and large Bayogo beans from Rota, an island of the Northern Mariana Islands.[1] The doll was about eleven inches tall and six inches wide. It was made out of five large Bayogo beans arranged vertically (if the doll was held by the head) comprising the hat, face, torso, and two feet, a large Bayogo bean arranged horizontally to support the legs and Hawaiian style hula skirt, and three small Bayogo beans comprising the neck and each hand. The face had a pointy nose, eyes made of lighter colored seeds, and a carved mouth. The male Bo Jo Bo Wishing Doll had short hair in the form of bangs while the female Bo Jo Bo Wishing Doll had bangs and long hair reaching the feet. In addition, the female Bo Jo Bo Wishing Doll had a Hawaiian style hula skirt.

From around 1976 - 1979, Mr. Rodigo Capati, the organizer of plaintiff Handicraft, was an employee of Mr. Camacho and was responsible for assembling and making the 1960s style Bo Jo Bo Wishing Dolls. It was during this time that the modern style Bo Jo Bo Wishing Doll was created.

//

//

---

[1] Large Bayogo beans are called St. Thomas beans and small Bayogo beans are called seabeans.

3

The modern style Bo Jo Bo Wishing Doll is made of a small Bayogo bean for the face, a small Bayogo bean for the torso, and four smaller non-Bayogo beans comprising its two hands and two feet. Many modern style Bo Jo Bo Wishing Dolls have a face with two painted black seeds for the eyes, a red painted seed for the nose, and a small painted white mouth. Generally, the male Bo Jo Bo Wishing Doll has no hair. Many female Bo Jo Bo Wishing Dolls have bangs in the front and long hair in the back, and a Hawaiian style hula skirt that comes in various colors. The long hair and hula skirt are tied down by a string. A female and male Bo Jo Bo Wishing Doll are attached together by a small Bayogo seed. It is often sold with a folded card attached to the dolls and identifies the Bo Jo Bo Wishing Dolls as "Legend of the Bo Jo Bo Wishing Doll" and "Bo Jo Bo Wishing Doll." On the inside of the card, there is a story and description of the Bo Jo Bo Wishing Doll written in English and Japanese.

After Mr. Camacho ceased producing the Bo Jo Bo Wishing Dolls in 1979, Mr. Capati left Mr. Camacho's employment. In 1980, with a business license held by a friend, Mr. Capati began making the modern style Bo Jo Bo Wishing Doll under the name "Bo Jo Bo Wishing Doll" and "Legend of the Bo Jo Bo Wishing Doll."

From 1984 onward, Mr. Capati produced the modern style dolls under the Saipan Woodcraft (later renamed Saipan Handicraft) business license. From 1984 to 1994, plaintiff Handicraft was the only producer of the Bo Jo Bo Wishing Doll. Handicraft sold its Bo Jo Bo Wishing Dolls to retail shops in Guam and on the islands of Saipan and Rota in the Commonwealth. *See* Fig. 1 & 3.

Since 1984, Handicraft has spent substantial sums of money advertising and promoting its Bo Jo Bo Wishing Dolls on the internet, and in Guam and Japan.

In 1994, defendant Tirzo J. Adriatico opened a business called Micronesian Woodcraft and began producing Bo Jo Bo Wishing Dolls. Defendant had been employed by Handicraft in 1992 and 1993. In 1994, Woodcraft's dolls did not have hair, a mouth, a hat, or a label, and the skirt was stiff and flat, as if it had been glued. *See* Fig. 5.

//

In May 2005 and September 2005, Handicraft's Bo Jo Bo Wishing Dolls were featured on Japanese television. Since then, sales for Bo Jo Bo Wishing Dolls have risen sharply.

Following the promotional campaign in Japan, Woodcraft modified its dolls by incorporating hair, shaping the skirt, adding a mouth painted in white and a pistachio nut shell hat, and attaching a label with "Bojo Bo Wishing Dolls" and "Legend of the Bojo Bo Wishing Dolls" imprinted in a font and format nearly identical to the card used by Handicraft.

Both parties sell their Bo Jo Bo Wishing Dolls at tourist concession stands and stores targeting tourists. These concession stands and tourist stores only sell one type of Bo Jo Bo Wishing Doll so consumers do not have a chance to make a side-by-side comparison. Because Woodcraft, selling virtually identical Bo Jo Bo Wishing Dolls, offered prices to undercut Handicraft's sale prices, popular tourist retail stores, such as Duty Free Shoppers ("DFS"), discontinued buying Handicraft's Bo Jo Bo Wishing Dolls. In June 2005, DFS replaced Handicraft's Bo Jo Bo Wishing Dolls with Woodcraft's Bo Jo Bo Wishing Dolls because they were practically the same and less expensive.

On October 13, 2005, Handicraft filed two applications with the U.S. Patent and Trademark Office ("PTO"), one for the mark "Bo Jo Bo Wishing Doll" and one for the mark "Legend of the Bo Jo Bo Wishing Doll." On December 1, 2005, Handicraft filed an application with the PTO for trade dress protection of the Bo Jo Bo Wishing Dolls.

### III. Irreparable Harm

"Irreparable harm is an injury that is not remote or speculative but actual and imminent, and 'for which a monetary award cannot be adequate compensation.'" *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d. Cir. 1995) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (1979) (per curiam)). Applying a trademark or a trade dress to goods produced by someone other than the trademark's or trade dress's owner both "deprives the owner of

5

the goodwill which he spent energy, time, and money to obtain . . . [and] deprives consumers of their ability to distinguish among the goods of competing manufacturers." *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 855 n.14 (1982). Because this goodwill and the loss of purchases due to the loss of goodwill is not quantifiable, a monetary award will not be adequate compensation. Accordingly, for the purposes of a preliminary injunction "[i]n a trademark infringement claim, 'irreparable injury may be presumed from a showing of likelihood of success on the merits.'" *GoTo.com, Inc.*, 202 F.3d at 1205 n.4 (quoting *Brookfield Commc'ns, Inc.*, 174 F.3d at 1066); *see Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.").

Defendant claims that Plaintiff suffers no irreparable harm because other third parties also using Plaintiff's alleged trademark and / or Plaintiff's trade dress are not included in the motion.[2] The fact that third parties are also injuring Plaintiff's goodwill and customer base, however, does not bear on Plaintiff's irreparable injury caused by Defendant's use of Plaintiff's mark and dress. Claiming that third parties are allegedly infringing on what Plaintiff claims as its trademark and / or trade dress does not excuse Defendant's alleged infringement of Plaintiff's claimed valid trademark and trade dress. Furthermore, if Defendant is infringing on Plaintiff's valid trademark and / or trade dress, that infringement is an entirely separate and distinct injury from any third party's alleged infringement.

Accordingly, the court finds that Plaintiff has shown irreparable harm.

//
//
//
//

---

[2] Plaintiff notes that it has named John Does 1-40 and that it is actively negotiating with several third parties.

6

## IV. Likelihood of Success on the Merits

"The purpose of a trademark is to distinguish the goods of one person from those of another . . . ." *Standard Paint Co. v. Trinidad Asphalt Mfg.*, 220 U.S. 446, 447 (1911). Accordingly, to establish a common law trademark infringement claim sufficient for a preliminary injunction, "[Plaintiff] must establish that it is likely to be able to establish . . . a likelihood of confusion." *GoTo.com, Inc.*, 202 F.3d at 1205 (quoting *Brookfield Commc'ns, Inc.*, 174 F.3d at 1045). This means that Plaintiff must show that it is likely to be able to prove that "[Defendant] is using a mark confusingly similar to [Plaintiff's] valid, protectable trademark." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1046; *see id.* at 1047 n.8 (explaining that the standard for the likelihood of confusion analysis is the same for registered and unregistered trademarks).

Accordingly, because Plaintiff does not yet have a registered trademark or trade dress, Plaintiff has the burden to show that it is likely to establish that the marks or dress are distinctive and nonfunctional, and that there is a likelihood that the purchasers will confuse Defendant's use of the marks or dress with Plaintiff's use of them. *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1998). The mark is distinctive if it is either inherently distinctive or has acquired distinctiveness through secondary meaning. *Id.*

### A. The Mark "Bo Jo Bo Wishing Doll" and "Legend of the Bo Jo Bo Wishing Doll"

Plaintiff must show that it is likely to establish that the mark "Bo Jo Bo Wishing Doll" and "Legend of the Bo Jo Bo Wishing Doll" is a valid, protectable trademark. *Brookfield Commc'ns Inc.*, 174 F.3d at 1046.

The term Bo Jo Bo Wishing Doll was applied to the 1960s style Bo Jo Bo Wishing Doll by Dr. Vitarelli for the purposes of creating a local handicraft item that the Commonwealth could sell and display at the local arts festival. The term Bo Jo Bo Wishing Doll, which is primarily sold in Micronesia and has a flair of Chamorro culture, sounds very similar to the Chamorro pronunciation of the name of the seed, bayogo. While this may suggest that the term "Bo Jo Bo Wishing Doll" is

suggestive of the seed that it is made of, this term had been used for about twenty years prior to Plaintiff's use of it. Accordingly, when Plaintiff adopted the term Bo Jo Bo Wishing Doll, the term was not suggestive, arbitrary or fanciful and, therefore, not inherently distinctive with respect to Plaintiff's dolls. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (explaining that terms that are suggestive, arbitrary or fanciful are inherently distinctive).

For the marks to have secondary meaning, the marks must "identify the source of the product rather than the product itself." *Inwood Labs., Inc.*, 456 U.S. at 851 n.11. To determine that the marks have secondary meaning the court looks at several factors such as the purchasers' degree of association of the marks to a single source, the degree and manner of advertising under the marks, the length and manner of use of the marks, and the exclusivity of use of the marks. *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996).

The purchasers' degree of association of the marks to a single source may be shown by actual confusion by the purchasers. *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873-74 (9th Cir. 2002). Here, Plaintiff has not shown that purchasers were actually confused by Defendant's use of the term Bo Jo Bo Wishing Dolls or Legend of the Bo Jo Bo Wishing Dolls. Furthermore, Plaintiff did not present any evidence that purchasers were actually confused.

The only evidence that Plaintiff presented regarding the degree and manner of advertising under the marks were the June 2005 and September 2005 Japanese television broadcasts. That, however, does not suggest an ongoing advertising program designed to create, in the eyes of the purchasers, a source identifier.

Finally, while Plaintiff had been using the marks since about 1980 and exclusively from 1980 to about 1994, exclusive use alone does not indicate that the marks have become a source indicator. While it is true that Plaintiff's exclusive use of the mark provided Plaintiff with the opportunity to build source identification, without any competition, a purchaser would not need to identify the term Bo Jo Bo Wishing Doll or Legend of the Bo Jo Bo Wishing Doll as a source indicator. Therefore, without facts to support that Plaintiff at least tried to build secondary meaning in the eyes of the

purchaser, exclusivity of use alone is not sufficient to find that Plaintiff has a protectable interest in the marks.

Accordingly, as Plaintiff has failed to show that it is likely to prove that it has a protectable interest in these terms, THE COURT DENIES Plaintiff's motion to preliminarily enjoin Defendant from using the terms "Bo Jo Bo Wishing Doll" and "Legend of the Bo Jo Bo Wishing Doll."

### B. Trade Dress of the Bo Jo Bo Wishing Doll

"[T]rade dress refers to the total image of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 823 (9th Cir. 1993).

There are at least two significant features that Plaintiff is claiming as its trade dress. First, Plaintiff claims the product packaging, *i.e.* the attached card, is a source indicator. On the cover of the card, "Legend of the Bo Jo Bo Wishing Doll" is typed in distinctive script at the top, and "Saipan Handicraft" is typed in serif and san serif font. Handicraft's address and phone number are also included on the cover. On the inside of the card, there is a story and description of the Bo Jo Bo Wishing Doll. The English version of the story is on the right and the Japanese version of the story is on the left. The English version is typed in sans serif and the Japanese version is typed using Japanese characters.

Second, Plaintiff claims product configuration, *i.e.* the features of the Bo Jo Bo Wishing Doll itself. Plaintiff claims that its use of a painted straight white mouth, a fluffy full skirt, a pistachio nut shell hat, and a tie around the hair and skirt is inherently distinctive with respect to similar sized dolls made of small bayogo beans.

### 1. Distinctiveness

Plaintiff is correct that trade dress may be inherently distinctive or acquire distinctiveness through secondary meaning. *See Two Pesos, Inc.*, 505 U.S. at 776. Trade dress is inherently

9

distinctive if the total image of the product is suggestive, arbitrary or fanciful. *See id.* at 768.

> For a trade dress to be inherently distinctive, a court must examine the trade dress and consider factors such as: 'whether it [is] a 'common' basic shape or design, whether it [is] unique or unusual in a particular field, [and] whether it [is] a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods. . . .'

*Lisa Frank, Inc. v. Impact Int'l, Inc.*, 799 F. Supp. 980, 988 (D. Ariz. 1992) (quoting *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 858 (11th Cir. 1983)). "[I]f the plaintiff's trade dress is not sufficiently distinctive to allow consumers to identify the product from the trade dress, then the dress does not inherently serve as an indication of origin and the plaintiff can claim no right to the exclusive use of that trade dress." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1536 (11th Cir. 1986).

Here, the total image of the product packaging, *i.e.* the attached card, is arbitrary: the size and dimensions of the card, the color and paper quality, and the font type and word layout. Furthermore, because of the distinguishable style of the card, a reasonable purchaser would look at the card and understand that the dolls that the card are attached to are made by a single source. Accordingly, Plaintiff has shown that it is likely to prove that the total image of the card is a protectable and valid trade dress.

The distinctiveness of the product configuration, *i.e.* the features of the Bo Jo Bo Wishing Doll, is more difficult to characterize. Here, Plaintiff claims that the total image of the painted straight white mouth, the long hair, the fluffy and loose skirt tied together with the long hair, and the pistachio nut shell hat is a source indicator. What is particularly striking about Plaintiff's doll is that while the Bo Jo Bo Wishing Doll was made and sold to portray the local Marianas and possibly the Chamorro culture, the doll has a pistachio nut shell hat. Unlike a seashell hat and a Hawaiian style hula skirt which may suggest an island and tropical lifestyle, the pistachio nut shell hat has no reasonable connection to the Commonwealth or the Chamorro culture. As such, the pistachio nut shell hat, in conjunction with the entire image, is completely arbitrary and suggests nothing more than a signature. Accordingly, because a signature is a source identifier, the pistachio nut shell hat on the Bo Jo Bo Wishing Doll is sufficiently distinctive for trademark law purposes.

Besides the pistachio nut shell hat, however, the court finds no distinctiveness in the Plaintiff's claimed product configuration. Plaintiff claims that the straight white mouth, long hair, and fluffy and loose skirt indicates quality and, as such, should be protected under trademark law. However, trademark law protects marks that indicate source. Under trademark law, others are free to provide a similar product that provides less, the same, or more quality.

**2. Non-Functionality**

While Defendant concedes that Plaintiff's claimed trade dress is not operationally functional, Defendant asserts that Plaintiff's claimed trade dress is aesthetically functional. Where a claimed trade dress is not registered, the burden is on Plaintiff to show that the claimed trade dress is non-functional. 15 U.S.C. § 1125(a)(3); *HWE, Inc. v. JB Research, Inc.*, 993 F.2d 694, 696 (9th Cir. 1993). "The fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a *whole* is functional; rather, 'functional elements that are separately unprotectable can be protected together as part of a trade dress.'" *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987)).

Comment c of the Restatement (Third) of Unfair Competition § 17 explains aesthetic functionality as follows:

> A design is functional because of its aesthetic value only if it confers a significant benefit that cannot practically be duplicated by the use of alternative designs. Because of the difficulties inherent in evaluating the aesthetic superiority of a particular design, a finding of aesthetical functionality will be made only when objective evidence indicates a lack of adequate alternative designs. . . . The ultimate test of aesthetic functionality, as with the utilitarian functionality, is whether the recognition of trademark rights would significantly hinder competition.

See *Qualitex Co. v. Jacobsen Products Co.*, 514 U.S. 159, 169 (1999).

There are significant alternative designs for the hat that is placed on the modern style Bo Jo Bo Wishing Doll. For example, the exhibits suggest that Bo Jo Bo Wishing Dolls may have a bayogo

11

seed hat similar to the 1960s style doll, or a seashell hat like Plaintiff's older style dolls, or it may have no hat but fuller hair. Foreclosing Defendant's use of a pistachio nut shell hat on a Bo Jo Bo Wishing Doll does not significantly hinder competition.

Accordingly, Plaintiff has shown that it is likely to prove that the pistachio nut shell hat on Plaintiff's Bo Jo Bo Wishing Doll is not aesthetically functional and is a protectable and valid trade dress.

### 3. Likelihood of Confusion

The court looks to several factors to determine the likelihood of confusion, such as evidence of actual confusion, Defendant's intent in adopting the trade dress, similarity of the trade dress, similarity of the goods and marketing channels, and the source indicating strength of the trade dress. *Fuddruckers, Inc.*, 826 F.2d at 845; *see Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 616 (9th Cir. 1989) ("Likelihood of confusion in the trade dress context is evaluated by reference to the same factors used in the ordinary trademark context . . . ."). In addition, the *Sleekcraft* factors include: strength of the mark, proximity of the goods, similarity of the marks, evidence of actual confusion, marketing channels used, and type of goods and the degree of care likely to be exercised by the purchaser. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1987).

Here, the factors favor Plaintiff's assertion that it is likely to be able to show that Defendant is using a confusingly similar trade dress with regard to the attached card and the use of the pistachio nut shell hat.

First, because both parties are selling Bo Jo Bo Wishing Dolls to tourists of the Commonwealth and Guam, their products are related and in direct competition.

Second, the product configuration is identical and the product packaging is nearly indistinguishable. *See* Fig. 1-4. The most distinguishable features of the product packaging, *i.e.* the attached card, is the slightly different spelling of Bo Jo Bo, the large circle in the middle of Plaintiff's card as well as the names and addresses of the companies, the different color of paper used, and the

slightly different Japanese translation of the Legend of the Bo Jo Bo Wishing Doll. The distinguishable features, however, are not apparent to the reasonable consumer who is not likely to have the opportunity to conduct a side-by-side comparison. In such an instance, the trade dress must be compared "on the basis of its likely effect upon consumers who do not have [Defendant's product] before them, but who may have a general, vague, or even hazy, impression or recollection of [Defendant's trade dress.]" *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976). In this respect, all these distinguishable features are outweighed by the identical product configuration, the use of similar pastel-colored cards (green and blue), the similar dimensions and size of the card, and the exact same wording of the English version of the story.

Third, both parties use the same marketing channels - tourist concession stands and stores targeting tourists.

Accordingly, Plaintiff has shown that it is likely to prove that Defendant's card attached to the Bo Jo Bo Wishing Doll is confusingly similar to Plaintiff's valid and protectable trade dress of the card. Furthermore, Plaintiff has shown that it is likely to prove that Defendant's dress of its Bo Jo Bo Wishing Doll is confusingly similar to Plaintiff's valid and protectable trade dress of the pistachio nut shell hat of the doll.

### V. Balance of Equities

Defendant is not an innocent infringer. Defendant was employed by Plaintiff for almost two years, directly involved in the production of Plaintiff's Bo Jo Bo Wishing Dolls, and began his business soon after leaving Plaintiff's employ. Defendant claims that it has acted in good faith by seeking permission from Gus Camacho in 1994 to make the Bo Jo Bo Wishing Dolls. However, Defendant had no reason to believe that the characteristics it adopted for its Bo Jo Bo Wishing Doll were created by Mr. Camacho. For example, the modern style Bo Jo Bo Wishing Dolls that Mr. Camacho produced until 1979 did not have a pistachio nut shell hat.

Furthermore, Defendant claims that it will lose significant revenue if forced to stop using the pistachio nut shell hat and the look of the attached card, and therefore the balance of equities favors Defendant. However, this claim further tips the balance of equities in favor of Plaintiff because, Plaintiff, having shown that it is likely to prove likelihood of confusion, will not be able to prove with certainty the portion of Defendant's revenue derived by consumer confusion.

Accordingly, the balance of equities favors Plaintiff.

## VI. Public Interest

A preliminary injunction in this situation is supported by the public's strong interest in free and open competition by allowing the trademark owner to protect its investment in creating goodwill. A preliminary injunction will also protect the public's strong interest in identifying the source of products and avoiding confusion as to the origin of the goods.

## VI. Conclusion

As Plaintiff has satisfied the requirements for a preliminary injunction as to part of its motion, THE COURT GRANTS IN PART AND DENIES IN PART Plaintiff's motion.

Accordingly, Defendant is enjoined during the pendency of this case from using the total image and look of Plaintiff's product packaging, *i.e.* the style and layout of the attached card, and the total image and look of Plaintiff's product configuration, *i.e.* the pistachio nut shell hat.

To clarify, Defendant is not enjoined from using the term "Bo Jo Bo Wishing Doll," "Bojo Bo Wishing Doll," "Legend of the Bo Jo Bo Wishing Doll," or "Legend of the Bojo Bo Wishing Doll." Defendant is also not enjoined from making and selling Bo Jo Bo Wishing Dolls with an attached card if the card does not implement the total image and look of Plaintiff's attached card. Moreover,

//

Defendant is not enjoined from making and selling Bo Jo Bo Wishing Dolls that do not use the pistachio nut shell hat.

IT IS SO ORDERED.

DATED this 17th day of January, 2006.

*Alex R. Munson*

ALEX R. MUNSON
Chief Judge