that specifically highlighted Handicraft's "Bo Jo Bo Wishing Dolls", the name and the legend. In the videos, famous people are seen making successful wishes using Bo Jo Bo Wishing Dolls and telling their story of happiness; and Handicraft's name and business location is prominently featured along with comments from its managers and owners as they make the wishing dolls.

77.  At our around the same time that these videos were being shown on Japanese Television, pictures and photographs of the Japanese Emperor receiving and holding Handicraft's "Bo Jo Bo Wishing Dolls" during a visit to Saipan in 2005 were also taken and published.

78.  These videos were shown repeatedly in Japan, combined with the Emperor photos, resulted in huge sale and high demand for Handicraft's Bo Jo Bo Wishing Dolls. People only wanted the original. They wanted the specific dolls mentioned and seen in the television spots and the high-quality, unique-styled dolls given to the Emperor, which dolls were produced by Handicraft.

79.  By virtue of their decades of consistent and diligent efforts and cultivated look, Handicraft has made the "Bo Jo Bo Wishing Dolls" name, legend, mark as well as the distinctive look and trade dress famous, which protected trade dress is not a functional part of the dolls.

80.  Without the knowledge or consent of Handicraft, and beginning long after Handicraft had established extensive and valuable goodwill in connection with its dolls identified by its trademarks and unique trade dress, Defendants, with full knowledge of the existence and reputation of Handicraft's dolls, and with the specific intent to deprive Handicraft of the great profits Handicraft was enjoying through the sale of its dolls, began making, marketing and selling, and they continue to make, market and sell, dolls that copy and use, without permission, the trademarks and trade dress of Handicraft in connection with the sale, offering for sale, distribution, advertising, and promotion of non-Handicraft dolls and counterfeit Handicraft dolls.

81.  In fact, the dolls manufactured and sold by Defendants use cards that imitate exactly the Handicraft card/label or use a card/label so closely resembling the label used by Handicraft as

to be nearly identical or identical.

82. Prior to Defendants' activities complained of herein, the Defendants have known of the use of Handicraft's trademarks to identify Handicraft's marketing of its dolls. Defendant Tirzo J. Adriatico and Defendant Micronesia Woodcraft Ent., Inc. had actual notice of Handicraft's use of the trademarks, as Defendant Tirzo J. Adriatico was employed by Handicraft in the years 1992 and 1993, during which time, Handicraft was actively manufacturing, marketing its dolls and using its trademarks and trade dress. All Defendants have actual and constructive notice of Handicraft's use of the trademarks through the delivery of notices to their businesses and agents as well as published press releases and phone calls, among other things.

83. In selecting and using the symbols, names, marks of Handicraft's dolls in connection with the sale, offering for sale, distribution, advertising, and promotion of their dolls, the Defendants have, each of them, acted and are acting with the purpose of taking the benefit of the favorable reputation and valuable goodwill which Handicraft has established in its trademarks, and causing their dolls to be passed off as made, authorized, sponsored, or endorsed by or otherwise connected with Handicraft.

84. In selecting and using identical, similar or confusing names, legends, marks or trade dress in connection with the sale, offering for sale, distribution, advertising, and promotion of their dolls, the Defendants have acted and are acting with the purpose of taking the benefit of the favorable reputation and valuable goodwill which Handicraft has established in its trademarks, and causing the dolls of others to be passed off as made, authorized, sponsored, or endorsed by or otherwise connected with Handicraft.

85. All Defendants modified their dolls, over time, to more and more closely resemble the Handicraft dolls; until they were exact imitations and complete counterfeits. Initially, Defendant Tirzo J. Adriatico and Defendant Micronesia Woodcraft Ent., Inc. began producing dolls that did not have hair, a mouth or a hat and that had no infringing label attached. In addition, the female

dolls skirts were distinctly stiff and flat.

86.  However, following the promotional campaign in Japan, Defendant Micronesia Woodcraft Ent., Inc. and Defendant Tirzo J. Adriatico and then the other Defendants modified or created or sold dolls to more closely resemble those of Handicraft by, for example, incorporating hair, shaping the skirts, adding white mouths, red noses, and a pistachio nut hat, and by attaching a label with "Bojo Bo Wishing Dolls" and "Legend of the Bojo Bo Wishing Dolls" imprinted in a similar font and format to resemble the Handicraft label.

87.  Defendants created dolls or changed the look of their dolls so much as to make them virtually indistinguishable from the dolls of Handicraft.

88.  Handicraft is informed and believes, and thereon alleges, that the general public is misled into buying Defendant Micronesia Woodcraft Ent., Inc. dolls and the dolls of the other Defendants under the impression that they are buying Handicraft dolls and that such confusion results solely from the Defendants' fraudulent and deceitful attempts to imitate Handicraft dolls and to pass off their dolls to the public as that of Handicraft or as being associated with those of Handicraft.

89.  Handicraft has protested the infringements and activities of the Defendants through repeated verbal communications, by sending them cease and desist letters, by giving notice of the preliminary injunction order issued in this case, and through general press releases published in the various newspapers of general circulation in the CNMI.

90.  Despite these demands and protest and notice from Handicraft, Defendants continue to infringe the trademark and trade dress rights of Handicraft and have taken no action to correct or stop their violations or worse have modified their dolls to pass them off as Handicraft dolls in an effort to claim no violation despite their outright fraud and misrepresentation of the facts.

91.  Investigators hired by Handicraft gave notice of the infringements and illegality of the actions of the Defendants to the Defendants, but despite such warnings, Defendants continued

the practice of buying only a few samples of Handicraft dolls, displaying them for customers, and then selling to their customers fake or counterfeit dolls, identical imitations or confusing knock-offs, that defendants themselves had purchased from others or manufactured and which they could promote as being Handicraft original dolls.

92. The practice became so common and the unfair advantages so large that Defendants began opening and hiding temporary factories all over the CNMI. Local printers and printers from other countries were used to duplicate the distinctive Handicraft card and logo; and each deceptive act and action of the Defendants caused injury and damage to the business, profits and reputation of Handicraft. Orders ceased, profits diminished and disappeared because fake and counterfeit dolls could be purchased at a fraction of the cost of the real Handicraft dolls.

93. Certain of the Defendants including, but not limited to Defendant Frank S. Pangelinan, interfered with Handicraft contracts for bayogo, converted Handicraft property to their own use, and manipulated government authorities to the injury of Handicraft.

94. Defendants, each of them, intend to continue and expand their uses of Handicraft's trademarks "Bojo Bo Wishing Dolls" and "Legend of the Bojo Bo Wishing Dolls" and associated trade dress within the Commonwealth of the Northern Marianas, Guam, Japan and elsewhere; as well as to continue and expand their manufacturing and sale of counterfeit and imitation dolls.

95. The names, legends, look, trade dress and symbols "Bojo Bo Wishing Dolls" and "Legend of the Bojo Bo Wishing Dolls" used by the Defendants are, in the very least, colorable imitations of and confusingly similar to Handicraft's trademarks and dress. At the very worst, Defendants' dolls are blatant rip-offs and counterfeit imitations of Handicraft dolls.

96. Defendants' activities complained of herein are causing confusion and are likely to cause confusion, to cause mistake and to deceive purchasers and others as to the source, nature and quality of the dolls marketed by them.

97. Handicraft has been seriously damaged by the actions of the Defendants, and unless

defendants are preliminarily and permanently enjoined, Handicraft and its goodwill and reputation will continue to suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated or compensated in money damages.

## COUNT ONE
## Violation of 15 U.S.C. § 1125(a)
## Use of False Designation in Interstate Commerce

98.     Handicraft hereby re-alleges paragraphs 1-97 in support of its claim under 15 U.S.C. § 1125(a) of false designation in interstate commerce against each of the Defendants.

99.     Defendants have caused dolls to enter into interstate commerce with the designation and representation "Bojo Bo Wishing Dolls" and "Legend of the Bojo Bo Wishing Dolls" connected therewith and used a trade dress unlawfully similar to those marks and dress owned by Handicraft.

100.    Defendants' use of the Handicraft's trademarks and trade dress are a false description and represent that such dolls are made by, sponsored by or affiliated with Handicraft.

101.    Defendants' acts are in violation of 15 U.S.C. § 1125(a), in that these Defendants have used, in connection with goods, a false designation of origin and a false description or representation, including words and other symbols tending falsely to describe or represent the same, and has caused such goods to enter into interstate commerce.

102.    Handicraft has been damaged by such false description and representation because, among other things, purchasers have been confused as to the true source, sponsorship or affiliation of Defendants' dolls.

103.    By reason of Defendants' acts alleged herein, Handicraft has suffered, and will continue to suffer, damage to its business, reputation, and good will and has lost sales and profits that Handicraft would have made but for the Defendants' acts.

## COUNT TWO
## Trademark Infringement

104. Handicraft hereby re-alleges paragraphs 1-103 in support of its claim of trademark infringement against each of the Defendants.

105. Defendants' aforesaid acts constitute trademark infringement in violation of Handicraft's trademark rights at common law and/or under the Act.

106. Handicraft has been damaged by such violations and infringement because, among other things, purchasers have been confused as to the true source, sponsorship or affiliation of Defendants' dolls.

107. By reason of Defendants' acts alleged herein, Handicraft has suffered, and will continue to suffer, damage to its business, reputation and good will and has lost sales and profits that Handicraft would have made but for the Defendants' acts.


## COUNT THREE
## Trade Dress Infringement

108. Handicraft hereby re-alleges paragraphs 1-107 in support of its claim for trade dress infringement against each of the Defendants.

109. Defendants' aforesaid acts constitute trade dress infringement in violation of Handicraft's trade dress rights at common law and/or under the Act.

110. Handicraft has been damaged by such violations and infringement because, among other things, purchasers have been confused as to the true source, sponsorship or affiliation of Defendants' dolls.

111. By reason of Defendants' acts alleged herein, Handicraft has suffered, and will continue to suffer, damage to its business, reputation and good will and has lost sales and profits that

Handicraft would have made but for the Defendants' acts.

## COUNT FOUR
## Unfair Competition

112.   Handicraft hereby re-alleges paragraphs 1-111 in support of its claim of unfair competition against each of the Defendants.

113.   Defendant's aforesaid acts constitute unfair competition with Handicraft in violation of Handicraft's rights at common law and/or under the Act.

114.   Handicraft has been damaged by such unfair competition because, among other things, purchasers have been confused as to the true source, sponsorship or affiliation of Defendants' dolls.

115.   By reason of Defendants' acts alleged herein, Handicraft has suffered, and will continue to suffer, damage to its business, reputation and good will and has lost sales and profits that Handicraft would have made but for the Defendants' acts.

## COUNT FIVE
## Tortious Interference with Contracts

116.   Handicraft hereby re-alleges paragraphs 1-115 in support of its claim of tortious inference with contracts against each of the Defendants.

117.   Defendants, personally and through their officers and agents, with full knowledge of the oral contracts and agreements between Handicraft and its buyers, distributors and retailers, and intending to harass, annoy, persecute, injure, destroy and otherwise interfere with the due prosecution of the Handicraft's business, wrongfully, intentionally and maliciously persuaded the buyers, distributors and retailers of Handicraft to ignore, repudiate and cancel contracts and to enter,

instead, into contracts and agreements with said Defendants, whereby said Defendants undertook to provide said distributors and retailers with their own or counterfeit dolls.

118.   Defendants, personally and through their officers and agents, persuaded Handicraft retailers, distributors and buyers to ignore, repudiate and cancel contracts with Handicraft by false, malicious and fraudulent representations that Handicraft was too expensive, unreliable or unable to furnish the goods and services contracted for, or by agreeing to protect and indemnify them against any and all liability incurred by reason of breach of the contracts and agreements previously entered into with Handicraft.

119.   The buyers, retailers and distributors of Handicraft would not have breached the contract and agreements made with Handicraft, but for the wrongful conduct of the Defendants.

120.   As a consequence of Defendants' conduct described above, Handicraft has been damaged.

## COUNT SIX
### Interference with Business Relationships with Customers

121.   Handicraft hereby re-alleges paragraphs 1-120 in support of its claim of interference with business relationships against each of the Defendants.

122.   Defendants, personally and through their officers and agents, and in furtherance of a purpose to harass, annoy, persecute, injure, destroy and otherwise interfere with the prosecution of Handicraft's business, did and still does, induce, persuade, and entice Handicraft's customers to have no business relations or transactions with Handicraft.

123.   In carrying out the acts alleged, Defendants, personally or through their officers and agents, made false, fraudulent and malicious representations to Handicraft's customers and prospective customers that Handicraft was too expensive, unreliable or unable to furnish the goods contracted for, or these defendants offered to enter into agreements with Handicraft's customers to

protect and indemnify the customers against any and all liability they might incur if they would breach and terminate their contracts with Handicraft.

124.   These acts of Defendants, through their officers and agents, were and are prompted by malice and all such acts were done maliciously, fraudulently, and without legal justification or excuse and as a consequence, Handicraft has been damaged.

## COUNT SEVEN
### Interference with Competitor's Contract for Supply of Raw Materials

125.   Handicraft hereby re-alleges paragraphs 1-120 in support of its claim of interference with competitor contracts against each of the Defendants.

126.   Manufacture of Handicraft's dolls requires a considerable supply of bayogo. These seeds can be found on Saipan and on Rota among other places. Handicraft has suppliers in both locations, as well as other locations.

127.   Defendant Micronesia Woodcraft Ent., Inc. and Defendant Tirzo J. Adriatico, personally or through their officers and agents, visited Handicraft's supplier on Rota and knowingly and maliciously made false statements that Handicraft had been "blacklisted" from purchasing bayogo on Rota, causing the supplier to doubt whether it should continue to sell bayogo to Handicraft.

128.   The above-mentioned statements by these defendants were and are totally false and were made by these Defendants with malice and knowledge of their falsity for the sole purpose of causing the supplier in Rota to cease doing business with Handicraft, thereby damaging or eliminating Handicraft as a competitor of defendants in the handcrafted doll market.

129.   Further, Defendant Frank S. Pangelinan and Defendant Igarashi Sho o Ten, Inc. manipulated CNMI government officials and obtained, by virtue of such manipulations and false representations, the raw bayogo seeds owned by Handicraft and used the same for his and their own

dolls to the injury of Handicraft.

130. As a result of the conduct of these Defendants, Handicraft has had to expend great time and effort to secure suppliers, recover stolen property and repair the damage done by these Defendants.

131. Defendants threaten to continue to do the acts complained of herein, and unless enjoined, will continue to do so, all to Handicraft's irreparable damage. It would be difficult to ascertain the amount of compensation which would afford Handicraft adequate relief for such continuing acts, and a multiplicity of judicial proceedings would be required. Therefore, Handicraft's remedy at law is not adequate to compensate it for its injuries.

## COUNT EIGHT
### Conversion

132. Handicraft hereby re-alleges paragraphs 1-131 in support of its claim of conversion against the named Defendants.

133. On or before August 19, 2005, Handicraft was the owners and in possession of the following described business property: four (4) 24"x16"x12" boxes and thirteen (13) 12"x16"x18" boxes – full of raw bayogos. The value of this property was in excess of $15,000.00.

134. Sometime on or after August 19, 2005, Defendants Frank S. Pangelinan and Igarashi Sho o Ten, Inc., among other Defendants, unlawfully took and carried away the above-described business property and converted and disposed of it to his and their own use and profit - to the injury and damage of Handicraft.

135. Handicraft made repeated demands for the return of the above-described business property, but Defendants Frank S. Pangelinan, Igarashi Sho o Ten, Inc., and others, refused, failed and neglected, and continue to refuse, fail and neglect, to deliver the business property and, without the consent of Handicraft, converted it to his and their own use and profit - to the injury and damage

of Handicraft.

## COUNT NINE
### Violation of the Consumer Protection Act
### 4 CMC §§ 5101, *et seq.*

136. Handicraft hereby re-alleges paragraphs 1-135 in support of its claims under the CNMI Consumer Protection Act against each of the Defendants.

137. Under the laws of the CNMI, the acts of each of the Defendants, as alleged herein, constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce.

138. In violation of 4 CMC § 5105(a), the Defendants, each of them, to the damage of Handicraft, have and continue to pass off the dolls they make, sell or distribute as being dolls made by Handicraft (many of them even going so far as to mimic the "TM" mark and phone numbers of Handicraft) – when, in fact, their dolls are counterfeits, fakes and frauds.

139. In violation of 4 CMC § 5105(b) and ( c), the Defendants, each of them, to the damage of Handicraft, caused tremendous confusion and misunderstanding as to the source, approval and certification of the dolls they were and are making, selling and distributing; as well as to their affiliation, connection or association with Handicraft. In many instances, Defendants represented that they were and are authorized dealers or distributors of Handicraft's dolls; or copied and counterfeited the distinct marks and dress of Handicraft's dolls to convey those representations to their advantage and the distinct disadvantage of Handicraft.

140. In violation of 4 CMC § 5105(d), (e) and (g), the Defendants, to the damage of Handicraft, deceived, and continue to deceive, by using false designations of origin, misrepresentations of mark, dress, quality, source, affiliation, status, connection and sponsorship.

141. In violation of 4 CMC § 5105(h), the Defendants, each of them, to the damage of

Handicraft, disparaged in word and deed the authentic and original dolls made by Handicraft by deceptively and falsely claiming that their dolls were the same (*i.e.*, Handicraft) dolls but at a much lower price - a fact that was false and misleading; or claimed that they had or owned the trademark or rights to the name, style or design.

142. In violation of 4 CMC § 5105(l) and (m), the Defendants, each of them, to the damage of Handicraft, engaged in unfair and deceptive conduct that created confusion and misunderstanding regarding Handicraft's dolls, their trademarks, trade-dress, availability, origin, price, and quality.

143. Handicraft has been injured and damaged by Defendants' violations of the Consumer Protection Act and has suffered, and will continue to suffer, damage to its business, reputation, goodwill and profits as a result thereof.

144. Handicraft has also incurred legal fees and costs as a result of these violations.

## COUNT TEN
## Fraud, Counterfeiting, Deceit

145. Handicraft hereby re-alleges paragraphs 1-144 in support of its claims of fraud and deceit against each of the Defendants.

146. As earlier alleged, and for many years prior to any sales or manufacturing of dolls by any defendant, Handicraft was in the business of manufacturing and selling its "Bo Jo Bo Wishing Dolls" to the general public, with its specific label, logo and marks.

147. Prior to any sales by any defendant, Handicraft had acquired an impressive reputation with the general public, as well as with individual retailers, as a result of the excellent quality of the dolls manufactured and sold by Handicraft, and a result of that reputation was growing its income and profits from the sale of its dolls.

148. Defendants, each of them, with full knowledge of the existence and reputation of Handicraft's dolls, and with the specific intent to deprive Handicraft of the great profits it was enjoying through the manufacture and sale of those dolls, manufactured and sold to the general public imitations of Handicraft's dolls. Without consent from Handicraft, Defendants sold their imitation dolls with marks, dress, labels, looks and styles so closely resembling those of Handicraft as to be indistinguishable from Handicraft's dolls.

149. Defendants' dolls, each of them, were put on the market and ever since, the sale and reputation of Handicraft's dolls have dropped considerably.

150. Handicraft is informed and believes, and based on that information and belief alleges that the general public, retailers and others are being misled into buying Defendants' dolls under the impression that it is buying Handcraft's dolls; and that such confusion results solely from Defendants' fraudulent attempts to imitate and counterfeit Handicraft's dolls and pass them along as Handicraft's dolls.

151. As a direct and proximate result of Defendants' fraudulent and deceitful acts, as described herein, Handicraft has been injured in its business and reputation.

152. Handicraft has no adequate remedy at law for the injuries and damages described above and has suffered, and will continue to suffer, irreparable harm unless the conduct of Defendants is immediately enjoined.

## PRAYER FOR RELIEF

WHEREFORE, Handicraft prays for relief against Defendants, jointly and severally, as follows:

1. That this Court grant and injunction and order that all counterfeit, fraudulent and fake imitations of Handicraft dolls, cards and other goods be delivered to Handicraft for disposal.

2. That this Court grant an injunction pursuant to the powers granted it under 15 U.S.C. § 1116, enjoining defendants and their agents, servants, and employees from directly or indirectly using the name "Bo Jo Bo Wishing Dolls' and "Legend of the Bo Jo Bo Wishing Dolls" or any mark, word, or name similar to Handicraft's mark which is likely to cause confusion or mistake or deceive consumers.

3. That this Court grant an injunction pursuant to the powers granted it under 15 U.S.C. § 1116, enjoining defendants and their agents, servants, and employees from directly or indirectly using the distinct characteristics and marks of Handicraft dolls including: the pistachio nut shell hat, the red noses, blue card, white mouths, hair and shaped skirts or any style, look, mark, or dress similar to those of Handicraft which are likely to cause confusion or mistake or deceive consumers.

4. That this Court, pursuant to the power granted it under 15 U.S.C. § 1118, order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendants bearing the mark "Bo Jo Bo Wishing Dolls" or "Legend of the Bo Jo Bo Wishing Doll" or distinctive marks, hats, mouths, noses, hair or skirts or any other mark or symbol confusingly similar shall be delivered up and destroyed.

5. That the injunction further:

(a) Prevent Defendants, each of them, individually and acting through business firms or associations, their agents, servants and employees, from using any advertising or promotional materials containing Handicraft's trademarks "Bo Jo Bo Wishing Dolls" or "Legend of the Bo Jo Bo Wishing Dolls", or pistachio nut hat, red noses, white mouths, hair and shaped skirts or any other similar or confusing mark or name, in the sale or promotion of their dolls;

(b) Prevent Defendants from copying Handicraft's trade dress associated with its trademarks, name and legend;

(c) Order Defendants to remove from any store dolls or products that violate the rights of Handicraft;

   (d) Prevent Defendants from manufacturing dolls or products in violation of Handicraft's rights;

   (e) Prevent Defendants, and each of them, individually and acting through business firms or associations, their agents, servants and employees, from doing any act or thing calculated to or likely to induce the belief that defendants' businesses or merchandise is in any way connected with Handicraft or its products.

  4. For an accounting by Defendants and judgment for the amount found to be due on such accounting in favor of Handicraft, for all profits realized by Defendants, and for all damages and loss of profits ascertained to have been sustained by Handicraft by reason of the unlawful conduct of the Defendants in amounts to be proven at trial..

  5. For any and all liquidated damages available against Defendants.

  6. For punitive damages against Defendants for their wilful, fraudulent, deceptive and injurious actions against Handicraft.

  7. For exemplary or punitive damages against Defendants in a sum to be determined at trial by reason of the willful, fraudulent and deliberate nature of Defendants' actions, involving malicious injury or a reckless indifference to the interests of Handicraft.

  8. With respect to Defendants, pursuant to 15 US.C. § 1117, for treble the amount of actual damages suffered by Handicraft or that the court award Handicraft punitive and exemplary damages in a sum to be determined at trial by reason of Defendants' fraud and passing off.

  9. For such other and further relief as this Court may deem just and equitable.

Respectfully submitted this _____4-18-06_____.

          F. MATTHEW SMITH
          Attorney for Plaintiff Saipan Handicraft

## VERIFICATION

I, the undersigned, as an owner and manager of Saipan Handicraft, a CNMI sole proprietorship and the Plaintiff in the above-captioned matter, under penalty of perjury, state that: (1) I have read the foregoing First Amended Verified Complaint and understand the contents thereof; (2) I hereby verify that the contents are true and correct; and (3) I have affixed my signature below on this __18__ day of April, 2006, on Saipan, CNMI.

_____
ADELA S. CAPATI