F. MATTHEW SMITH
Law Office of F. Matthew Smith, LLC
2nd Floor, UIU Building, Chalan Monsignor Guerrero
San Jose Village
P.O. Box 501127
Saipan, MP 96950
Telephone No.: (670) 234-7455/234-7427
Facsimile No.: (670) 234-7256

Attorney for Plaintiff.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| SAIPAN HANDICRAFT,<br><br>　　　　　　Plaintiff,<br>vs.<br><br>MICRONESIA WOODCRAFT ENT., INC.,<br>et al.,<br><br>　　　　　　Defendants. | Civil Action No. 05-0040<br><br>**COUNSEL'S AFFIDAVIT IN SUPPORT OF MOTION FOR LEAVE TO WITHDRAW UNDER LR 83.5.g.4** |

I, F. Matthew Smith, give the following statement under oath:

1. On September 7, 2005, I entered into an representation agreement ("Agreement") with Handicraft, by and through its owners, Rodrigo M. Capati ("RMC") and Adela S. Capati ("ASC"), in the above action, in which I was retained to assist Handicraft in filing suit to secure injunctive and other relief based on common law trademark rights and statutory rights in their Bo Jo Bo Wishing Doll, and to further assist them in obtaining registered trademark, trade-dress, and copyright protection under United States Trademark and Copyright laws.

2. The Agreement was for representation based on a reduced hourly rate of $150.00 per hour, with a retainer amount to be deposited into a client trust account, and from which fees and expenses would be deducted on a monthly basis as earned with a billing statement furnished to Handicraft reflecting all work performed and expenses incurred for the preceding month. RMC and ASC agreed and promised to pay any outstanding amount promptly, and in no case later than 30 days after the billing statement was issued. It was further agreed by them that the retainer shall be replenished by Handicraft as needed, and under no circumstance would I or my firm advance any

funds to cover litigation, given the small size of my firm and my litigation resources.

3. Since entering into this Agreement with Handicraft, I have acted with the diligence required of me as an attorney representing Handicraft. I have fulfilled my part of the Agreement by filing this present action in this court, and by causing to be filed applications for trademark and trade-dress protection and copyright protection with the United States Patent and Trademark Office and the United States Copyright Office. I am counsel of record on these applications and have been diligently pursuing their prosecutions.

4. Up until July, 2006, Handicraft had been current with their billing statements, although I have had to continually remind both RMC and ASC of the condition that neither I nor my firm will front litigation costs and expenses in this matter. As of August 31, 2006, Handicraft owes an outstanding amount of $9, 835.90 in fees and costs. The account is more than 30 days in arrears and I have received no payment or any promise or assurances of payment by either RMC or ASC.

5. In July, 2006, I had two separate meetings with ASC regarding representation matters, specifically, settlement negotiations and account payment. At both conferences, I asked ASC that she and RMC pay their outstanding balance after giving her my monthly billing statement. At this point, they owed me $4,963.03 in fees and costs. I also followed up by telephone with ASC several times regarding case progress and billing status. During this time I was aware that RMC was off-island, attending to personal business in the Philippines. I requested ASC to relay our discussions to RMC, but was informed that she had difficulty getting a hold of RMC. I asked for a telephone number where I could reach him and was provided one by ASC, after which I spoke with RMC by phone and discussed these same matters with him.

6. About mid-August, several developments concerning RMC and ASC came to my attention. After immediate investigation, I verified that these developments were in fact true. These developments have also been confirmed by both RMC and ASC. RMC remained in the Philippines for the entire month of August and remains there still. After numerous attempts in calling the Philippine number, I have spoken with RMC briefly on a couple of additional occasions. I informed

him of the case status and the fact that no payment had been made in over a month on the account. It was clear after these telephone calls that RMC and ASC held differing beliefs and conflicting views in how prosecution of this matter should proceed. I also met with ASC and had numerous telephone conversations with her over the same issues–her conflicting ideas on representation and outstanding billing. On August 29, 2006, I sent a letter to both RMC and ASC regarding their irreconcilable positions and the nonpayment of their account and advised them that I would seek to withdraw from representation if their account was not satisfied in full on or before September 6, 2006, and if they could not at minimum, attempt to resolve their differences.

7. RMC's continued unavailability for over two months and the general atmosphere of dissension surrounding the relationship between RMC and ASC has made representation severely burdensome. Moreover, given their actual divergent interests that I believe are fundamentally irreconcilable, my ability to deliver conflict-free representation has been compromised. Furthermore, I and my firm suffer continuing hardship as a direct consequence of the nonpayment of my fees and costs which I also believe they are currently unable to pay, with no assurance of payment in the future.

8. Reasonable notice of my intention to seek permission from the court to withdraw from representation was given to ASC personally on September 14, 2006, and was mailed, postage prepaid, to RMC to his current address in the Philippines on September 13, 2006. Opposing counsels of record have also been served with a copy of my motion and informed of my intention to seek expedited hearing on the matter.

Dated this 14th day of September, 2006.

F. MATTHEW SMITH, Esq.